SAMUEL GORDON, administrator,

*v.*

ELLA R. TOLER.

[Decided March 2d, 1914.]

1. A depositor signed a printed form directing the bank to add her
sister's name to the account, giving joint rights therein, and to pay the
deposit to either or to the survivor. A by-law printed in the pass-book pro-

vided that no one should have the right to receive any sum without producing the pass-book. Thereafter the original depositor stated that she did not wish her sister to have the money, and drew certain sums and retained the book in her possession until her death.—*Held*, that such form was made only to facilitate the drawing of the money, and that the original depositor intended to retain and, in fact, did retain control of the deposit during her lifetime, so that there was no completed gift *inter vivos.*

2. Statute of wills, prescribing the manner in which a testamentary act shall be executed, was not impliedly repealed by Savings Bank act (*4 Comp. Stat. 1910 p. 4703* § *27*), providing that a deposit made in the name of two persons payable to either or to the survivor may be paid to either, whether the other be living or not, since the later act was intended only to protect savings banks, and the two statutes may stand together; and hence a depositor's act in making the deposit payable to her sister or to the survivor, but intending to retain and retaining the pass-book and control of the fund during her lifetime, did not operate as a testamentary disposition of what remained at her death.

3. Such acts of the depositor did not have the effect to give any beneficial interest to a joint depositor as survivor, since the gift was never completed, and an incomplete gift will never be perfected in a court of equity.

*Mr. Edwin B. Goodell,* for the complainant.

*Mr. Charles H. Halfpenny,* for the defendant.

STEVENS, V. C.

Matilda Gordon, complainant's testatrix, had an account in the Bloomfield Savings Institution. On July 8th, 1912, and about eight months before her death, she went to the bank with her sister, Ella R. Toler, and there signed the following paper:

"BLOOMFIELD, N. J., July 8th, 1912.

"The Bloomfield Savings Institution is hereby authorized and directed to add the name of my sister, Ella R. Toler, to my account No. 10,884, giving equal and joint rights and privileges in said account and make the funds now on deposit or hereafter deposited payable to either of us or to the survivor.

"MATILDA GORDON.

"Witness, HOWARD BIDDULPH."

The authority thus signed was on the printed slip the bank was accustomed to use. "The intent," says Mr. Biddulph, the treasurer, "was to make the account payable to either (sister) or to the survivor." Having this authority, he wrote under the

name "Matilda Gordon" in the pass-book, the words "or Ella R. Toler" and stamped under both names the further words "payable to either and to the survivor." We have no evidence of what Mrs. Gordon said at the time, nor any evidence as to what she, in fact, intended, except her subsequent declaration and acts. Sarah Gordon, a cousin of her husband, testifies as follows:

"I asked her 'why did you have the name put to the bank book.' She said, because I have this asthma and sometimes I might be so that I couldn't talk and she could draw the money out of the bank, because the children couldn't draw it, because they weren't of age. And I said, I asked her, if she wanted her to have the money. She said no, not a bit of it."

The undisputed evidence is that the bank pass-book remained in her possession up to the time of her death and the entries therein show that on eight occasions, between November, 1912, and December, 1913, she drew out sums varying from $10 to $65.

Article 7 of the by-laws, as printed in the pass-book provides, that "no person shall have the right to demand or receive any sum as principal or interest without producing his pass-book; that the amount demanded and paid may be entered therein."

The contract made by the bank was therefore in effect "I will pay the sum deposited or any part thereof to Matilda Gordon or Ella R. Toler and the survivor, on production of the pass-book."

The only reasonable inference to be drawn from the above facts is that Mrs. Gordon intended to retain and did in fact retain, control of the fund during her lifetime; and that the above entry was made only to facilitate the drawing of the money. There was no completed gift of it *inter vivos.* The case of *Skillman* v. *Wiegand, 54 N. J. Eq. 198,* and the other cases cited by counsel are conclusive on this head.

The question then arises was there a gift of what remained at her death. The effect of the word "survivor" was considered in *Stevenson* v. *Earl, 65 N. J. Eq. 721.* It was there held by the court of errors and appeals that an act essentially testamentary could not be effectuated by a paper like that in controversy, because not made in the manner prescribed by the statute of wills.

This decision would undoubtedly rule the present controversy, as far as the question of gift to take effect at death is concerned, were it not for section 27 of the act concerning savings banks, enacted since it was decided. The section reads as follows:

"When a deposit has been or shall hereafter be made in the name of two persons, payable to either or payable to either or the survivor, such deposit or any part thereof or interest or dividend thereon, may be paid to either of said persons, whether the other be living or not and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made."

The question is whether this section was intended to do anything more than protect savings banks. It certainly was not designed to make that a gift, which according to the evidence was not a gift, present or future, but only a convenient way of drawing money, and it ought not to be construed as an implied repealer, *pro tanto,* of the Wills act if the two statutes may stand together. It is manifest that they may. The survivor may hold in trust for the estate of the deceased depositor, and the bank, taking the receipt of the surviving depositor, may be discharged from liability for what it pays out. It is not to be presumed that the legislature, under an act entitled "An act concerning savings banks," intended, if it could constitutionally intend, to repeal the Wills act in part and thus to dispense with those safeguards which have so long been deemed essential to protect the estate of a decedent. No such construction is necessary. *Garrick* v. *Taylor, 4 DeG. F. & J. 159, 165.*

But even if the act should be held to have a wider scope, it cannot be held to have had the effect of giving a beneficial interest to Mrs. Toler if the evidence does not show a donative purpose. Giving to the word "survivor" its fullest effect, the intent to make a gift is inconsistent with the repeated acts of Mrs. Gordon in drawing out money and especially with her failure at any time to deliver the pass-book to Mrs. Toler. Not only is there no proof of its delivery, *animo donandi,* but no proof of its delivery for any purpose whatever. As the contract was to pay on the production of the book, delivery of it was, under the circumstances, essential to the completion of the gift. An incomplete gift is never perfected by a court of equity.

The complainant is entitled to a decree.