Appellants, executors of the will of Francis R. Haussling, filed a bill in Chancery seeking a decree requiring Catherine Guenther to pay over to them the sum of $10,705.10 on deposit in the Howard Savings Institution, Newark, New Jersey, or, failing in that, that she be decreed a trustee for the benefit of complainants, as to said sum.
Miss Guenther, superintendent of Newark Memorial Hospital, was an intimate friend and professional associate of Doctor Haussling. In 1937 he and Miss Guenther went to the Howard Savings Institution where an account was opened in the names "Francis R. Haussling and Catherine Guenther, payable to either or survivor." The initial deposit was $10,085.20, received by Dr. Haussling from the proceeds of a government insurance policy. A day or two prior to the opening of the account Dr. Haussling had a telephone conversation with his personal attorney, deceased at the date of hearing, to whom the doctor said that he had the money and wanted it deposited so that "Sister" [Miss Guenther] would have easy access to it if anything happened to him. From the opening of the account until after Dr. Haussling's death, four years later, no deposits or withdrawals were made. The ledger card and signature cards were signed by Francis R. Haussling and Catherine Guenther. Above the signatures on the ledger card it read: "I hereby agree to conform to and abide by the Rules and By-Laws of The Howard Savings Institution." Each signature card contained the assent of the depositor "to the Regulations and By-Laws of the Institution." The deposit book contained the information that "no payments will be made at any time unless this pass-book is presented." The pass-book was continuously in Miss Guenther's possession from the time the account was opened until the doctor's death, excepting on three occasions when she gave the book either to Dr. Haussling or to his secretary for income tax purposes. That the intention of Dr. Haussling, *Page 55 
by delivery of the pass-book to Miss Guenther, was to make a gift of the funds on deposit is borne out by the fact that the doctor, in July, 1941, sold $2,000 worth of Treasury Certificates to pay certain property taxes assessed against him. The sale of a part of his capital to meet taxes due is difficult to understand if Dr. Haussling considered the deposit in the Howard Savings Institution to be his. The course pursued by the doctor is strong evidence that he considered the funds on deposit to be the property of Miss Guenther.
The learned Vice-Chancellor found that the three necessary elements of a valid gift inter vivos were present; that is to say, a donative intent, an actual delivery, so far as the nature of the subject-matter permitted of delivery, and a stripping by the donor of his ownership and dominion. Bankers Trust Co. v.Bank of Rockville. c., 114 N.J. Eq. 391, 396. With this finding we are in complete accord. We do not agree, however, with what the court below had to say as to the effect of R.S.17:9-5, which reads, so far as pertinent:
"When a deposit has been, or shall be, made in any bank ortrust company * * * in the names of two persons, payable to either, or payable to either or to the survivor, the balance * * * may be paid to either of said persons during the life of both and in case of the death of either * * * the balance * * * shall be paid to the survivor, and the legal representatives of the one dying shall not have any claim or right thereto * * *."
R.S. 17:9-5.1 reads, so far as pertinent:
"When a deposit has been or shall be made in any savings bank
* * * in the name of two persons, payable to either, or payable to either or the survivor, such deposit, or any part thereof * * * may be paid to either of said persons, whether the other be living or not, and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made."
This last-quoted act as found in the present Revised Statutes is substantially a re-enactment of section 27 of chapter 195, laws of 1906, entitled "An act concerning savings banks." InGordon v. Toler, 83 N.J. Eq. 25, it was held that its *Page 56 
purpose was only to protect savings banks and was not sufficient to establish a gift where none was intended. From 1906 through the Revision of 1937 the legislature has enacted legislation applicable to joint accounts in savings banks different to that enacted with respect to the same type of account in "any bank or trust company." Such a consistent pattern negatives the thought that it was intended to include savings banks within the more general category of R.S. 17:9-5. We agree with the holding of Vice-Chancellor Stevens in Gordon v. Toler, supra, and hold that R.S. 17:9-5 has no application to the instant case.
We are urged to resolve an asserted conflict between the holding in Thatcher v. Trenton Trust Co., 119 N.J. Eq. 408,
and the holding in Hickey v. Kahl, 129 N.J. Eq. 233. Suffice it to say that those cases dealt with a statute relating to deposits made in the name of one person "in trust" for another. This question is not before the court. The decree appealed from is affirmed.
For affirmance — THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, JJ. 12.
For reversal — PERSKIE, J. 1.