This is a controversy over two savings accounts standing in the name of Mathilde G. Bear in trust for her two daughters, Mathilde Oestrich and Louise Smith. One of the accounts, in the Franklin Savings Institution, was opened in 1930 and for some undisclosed reason was closed three years later, and the balance therein, $7,267, was transferred to a new account in the same bank and with the same title as the old. In 1937, Mrs. Bear signed the agreement relative to this account, which is discussed below. The other account was opened by Mrs. Bear in the United States Trust Company in 1935. On July 23d 1943, Mrs. Smith died, but no change was made in the title of the accounts. Mrs. Bear passed away January 3d 1945, at which time the balance in one bank was $592, and in the other, $6,520. Mrs. Bear's executors claim title to both funds and so does Miss Oestrich.
The bill shows that the supervisor of the Inheritance Tax Division of New Jersey asserts that both accounts were the property of Mrs. Bear at her death, and are part of her estate. The complainants join him as one of the defendants. He objects to the joinder and asks that the bill be dismissed as to him. Where, in the course of settlement of a decedent's estate, the executor and a third person contest the ownership of a savings account, the jurisdiction of Chancery to adjudicate the matter on a bill filed by the executor or by the other claimant, is well established by a long line of precedents. New Jersey TitleGuarantee and Trust Co. v. Archibald, 90 N.J. Eq. 384;Commercial Trust Co. v. White, 99 N.J. Eq. *Page 35 119; 100 N.J. Eq. 561; Johnson v. Savings Investment and TrustCo., 107 N.J. Eq. 547; Hudson Trust Co. v. Holt, 115 N.J. Eq. 34; Thatcher v. Trenton Trust Co., 119 N.J. Eq. 408; Hickey v.Kahl, 129 N.J. Eq. 233; Lester v. Guenther, 132 N.J. Eq. 496;134 N.J. Eq. 53; Wolf v. Wolf, 136 N.J. Eq. 403. This procedure avoids circuitry of action and multifarious suits.Travers v. Reid, 119 N.J. Eq. 416. In such a suit, the decree determining the title to a bank deposit may affect substantially the tax on the decedent's estate. In the absence of fraud, it is quite likely that the adjudication is conclusive when the tax comes to be assessed, even though the taxing authority was not a party to the cause. Restatement — Judgments, §§ 83 and 110; 34C.J. 526 and 1039; 33 C.J.S. 1099. In an action by the executor to recover assets which may be part of the estate, or in an action against the executor to establish a debt alleged to have been owed by decedent, the executor represents creditors to the extent that they are bound by the judgment. Does he likewise represent the state? I need not attempt to answer the question, since in the present cause, the supervisor of the Inheritance Tax Division is named as a defendant in order that the state may be concluded beyond question, and also that the supervisor may have opportunity to protect the interests of the state by presenting to the court such facts and arguments as he may deem proper. The joinder is not without precedent. Shippee v. Shippee, 122 N.J. Eq. 570; Carter v. Martin, 124 N.J. Eq. 106. On general principles, the supervisor appears to be a proper, although not a necessary party. Chancery Rule 6. As the agent of the state, he has a substantial interest in the controversy, that is, the question of title to the bank accounts. The director of the Division of Taxation, rather than the supervisor, might better have been named to represent the state, but no objection has been made on this ground.
The Attorney-General contends that the joinder of the state supervisor converts the cause into an action against the state, in disregard of the principle that the state is not suable without its consent. The general principle is well settled. Not only are those suits barred in which the judgment sought would subject the state to a liability, but the rule has a much *Page 36 
wider scope and has been held to apply, for instance, to an action to foreclose a tax sale certificate. Irvington v.Ollemar, 128 N.J. Eq. 402; 131 N.J. Eq. 189; a suit to quiet title, Karp v. High Point Park Commission, 131 N.J. Eq. 249;132 N.J. Eq. 351; and a suit for a declaratory judgment. EmpireTrust Co. v. Board of Commerce, 124 N.J. Law 406. But there are limitations to the rule. In our leading case, American Dock,c., Co. v. Trustees of Public Schools, 35 N.J. Eq. 181, 252,
Mr. Justice Depue said: "In certain cases where the interests of the crown are incidentally concerned, the Attorney-General may be made a defendant in equity." He gave as instances, suits to subject goods of a debtor to payment of his debts, or to recover a legacy, or to collect dividends on stock shares, in which the Attorney-General was made a party for the purpose of determining whether the subject-matter, that is, the creditor's assets, the legacy, or the stock shares, had passed to the crown by forfeiture in the first two actions, or as property derelict in the last. The American Dock Case was primarily a suit to quiet title brought by one railroad company against another. The Trustees of Public Schools, an agency of the state, held a mortgage which had been created by the defendant company, and which was worthless, if that defendant had no title. The court held: "In a suit such as the complainants have brought, a mortgagee of the owner of the adverse title is a proper but not a necessary party. Though the complainants may not be able, as against the trustees, to present some of their grounds for relief, for the reason that the trustees are not the proper parties to litigate them, the trustees were properly made parties to this bill, and the relief prayed may, if the grounds of it are otherwise sufficient, be decreed against them." The prayer with respect to the trustees was that their title be decreed to be invalid and that they be restrained from proceeding to sell the premises under a decree of foreclosure which they had obtained.
Comparing the cases mentioned, we may observe that in theKarp and Empire Trust Co. suits, the agencies of the state were the sole defendants, the bills attacked nothing except the title of the state; while the American Dock Case was essentially a contest between the two railroad companies *Page 37 
wherein the interests of the state, though substantial, were only incidentally concerned. The Ollemar Case at first glance seems closer to the American Dock Case, but may readily be distinguished. The town, holding a tax sale certificate, brought foreclosure against the landowner and encumbrancers, including the state which had a lien for inheritance taxes. If the town had been permitted to proceed against the state and established the priority of its lien, the state would have been compelled to pay the town's lien, or else abandon its own. In practical effect, the decree would have subjected the state to a liability for which the legislature had made no provision. As part of the same litigation, the holder of a mortgage on part of the land filed a bill praying, among other relief, that the lien of the state be apportioned among all the properties of decedent. In that cause, the state made no objection to its joinder.
The suit now before me is primarily a contest between the executor complainants and the defendant Oestrich, in which the state is incidentally concerned because of the inheritance tax. Its agent is properly joined as a defendant. Let us now proceed to the merits.
The test of title to the savings accounts is indicated by a quotation from Eagles Building and Loan Association v.Fiducia, 135 N.J. Eq. 7; 136 N.J. Eq. 117:
"When a person procures a bank account, or shares of stock, or other property to be put in his name `as trustee for A,' his so-doing is such a manifestation of his intention as is sufficient to create the trust, provided such was his intention. And his so-doing is also some proof of his intention. But often a savings account is opened in this form, although there is no intent to create a trust. Because of the frequency of this situation, our courts have ruled that the style of the account is not, of itself, sufficient proof of intention to create a trust.Nicklas v. Parker, 71 N.J. Eq. 777; In re Farrell, 110 N.J. Eq. 260; Hudson Trust Co. v. Holt, 115 N.J. Eq. 34; Hickey v.Kahl, 129 N.J. Eq. 233. Other circumstances are looked to. For example: What did the depositor say? Did he use the fund, after opening the account, as if the money were his own? Was the alleged beneficiary sui juris *Page 38 
or not? Since a trust in the form under consideration is a passive one, and the beneficiary has an immediate right to possession, why was not an outright gift made?"
Throughout the time covered by Mrs. Bear's savings accounts, Miss Oestrich was employed at an excellent salary, and was in the habit of turning over the greater part of her pay to her mother. But her contributions to her mother are not shown to have been a source of the money deposited in the two accounts. Mrs. Smith, who was a widow, not gainfully employed, contributed nothing to the fund. Presumably all the money which Mrs. Bear deposited was her own. She withdrew money from the two accounts from time to time for her own purposes just as if the money was still hers. For instance, in February, 1941, she used $6,000 to pay off a mortgage on property which she owned and to buy corporate stocks which she took in her own name. In December of the same year, she drew $10,000 from the Franklin Savings account and with this money bought for herself a government bond. None of the withdrawals were for the direct benefit of Miss Oestrich or Mrs. Smith. The two pass books were kept in the Bear home in a box with other papers, and Miss Oestrich had access to the box. There was never, however, anything which might be considered a delivery of the pass books to Miss Oestrich.
Looking only to the facts, and to the rule of Nicklas v.Parker, it is evident that Mrs. Bear made no gift of the money to her daughters and created no trust for their benefit. But Miss Oestrich relies on the statute R.S. 17:9-4. This section of theRevision, or its original, P.L. 1932 p. 59, has been the subject of divergent decisions by the late Vice-Chancellor Buchanan, in Thatcher v. Trenton Trust Co., 119 N.J. Eq. 408;
Vice-Chancellor Berry, in Travers v. Reid, 119 N.J. Eq. 416;
and Vice-Chancellor Fielder, in Hickey v. Kahl, 129 N.J. Eq. 233.
In the hope of understanding the statute, we go back to the 1903 supplement to an act concerning trust companies (Revision of 1899). "Whenever any deposit shall be made by any person in trust for another, and no other or further notice of the existence and terms of a legal and valid trust *Page 39 
shall have been given to the trust company, in the event of the death of the trustee, the same or any part thereof, together with the dividends or interest thereon, may be paid to the person for whom the said deposit was made, or to his or her legal representatives." P.L. 1903 p. 446. Three years later, a provision almost identical was included in section 26 of an act concerning savings banks, P.L. 1906 p. 348.
The supplement to the Trust Company Act came before Chancery in 1930 in Jefferson Trust Co. v. Hoboken Trust Co., 107 N.J. Eq. 310,
and the court held that the purpose of the statute was merely to protect the trust company from liability in the event of its making payment "to the person for whom the said deposit was made," and that the statute had no bearing on the ownership of the deposit. Then, two years later the legislature amended the statutes of 1903 and 1906. The permissive "may be paid" was changed to the imperative "shall be paid to the person in trust for whom the said deposit was made or to his or her legal representatives." And there was added this significant clause: "And the legal representatives of the deceased trustee shall not be entitled to the funds so deposited, nor to the dividends or interest thereon, notwithstanding that the funds so deposited may have been the property of the trustee." At the same time, there was enacted a like supplement to an act concerning banks and banking, and still another statute to the same effect concerning deposits in savings banks, trust companies and banks. P.L. 1932pp. 59, 60, 62 and 63. All four of these statutes are now combined in R.S. 17:9-4.
By the acts of 1903 and 1906, unamended, the legislature dealt with the situation where an account stands in the name of "A in trust for B" and the bank is without further information concerning the true ownership of the account. It may belong to A or it may be a dry trust so that title vests in B, or it may be an active trust. The statute protected the bank if it paid B, even though A's representatives should eventually appear to be the owners of the fund. Vice-Chancellor Berry, in Travers v.Reid, after the 1932 enactments, held that the court must, in the first place, determine from the proofs and without regard to the statutes whether *Page 40 
or not there was a valid trust and that the statutes only applied if the court should determine that there was such a trust and that B was the beneficiary. It seems to me that this conclusion gives insufficient weight to the history of the legislation.
The original acts of 1903 and 1906 meant by the phrase, a deposit "made by any person in trust for another," an account in the form "A in trust for B," regardless of whether or not a valid trust had been established. That much is clear. The amendatory acts of 1932 and the two other statutes adopted at the same time, retained the phrase descriptive of the deposits that was found in the original acts. Phrases in an amendatory act which are taken unaltered from the original act are usually given the same effect as before the amendment. Under our constitution, an amended section must be recited in full in the amendatory act. By observing this constitutional requirement, the legislature does not express an intention then to enact the whole section as amended, but only to enact the changes indicated. McLaughlin v.Newark, 57 N.J. Law 298; 58 N.J. Law 202. The phrase which describes the deposits should be given the same meaning as formerly and be considered to relate to the same class of deposits. Otherwise the legislature in 1932 accomplished nothing except to take away from the banks the protection which theretofore they had; so that now a bank can pay anyone only at its peril.
Vice-Chancellor Fielder in Hickey v. Kahl, construed the statute as follows: "I think its intent plain and that it is my duty to give effect to such intent, which I find to be that when one (donor) opens an account in a savings bank in his name in trust for a named beneficiary (donee) and there is no evidence as to the intent of the donor which can be shown after the donor's death, other than as can be gathered from the form in which the account was opened, the intent of the donor shall be taken to be to create an immediately effective trust for the benefit of the donee, over which the donor reserves a power of revocation, as evidence of which he retains possession of the pass book, and that so much of the funds deposited in that trust account over which the donor has failed to exercise his power of revocation shall belong to the *Page 41 
donee free from any claim thereto on the part of the donor's legal representatives. In such a case, the only effect of the donor's death is to terminate his power of revocation. His death does not complete the trust but renders it irrevocable."
Much the same legislative intent was discovered by Vice-Chancellor Buchanan, but he found the language of the statute so confused and difficult to comprehend that he was unable to give effect to the intention of the legislature.
While a legislative enactment may be inoperative and void for uncertainty, yet a statute is discarded for uncertainty only as a last resort. The judiciary should give effect to the intention of the legislature, if the intention can be found with reasonable assurance, and if the language of the statute at all permits.50 Am. Jur. 486. Miller v. Belmont, c., Co. (Pa.),110 Atl. Rep. 802. How far a court will go is illustrated by Johnson Johnson v. Weissbard, 121 N.J. Eq. 585, and Kohn v. LocalNo. 195, c., 132 N.J. Eq. 512, where operation was given to statutory provisions which at first sight seemed almost meaningless. "In the interpretation and construction of statutes, the primary rule is to ascertain and give effect to the intention of the legislature and the intention of the legislature is to be ascertained not merely from the language of the act taken as a whole, but where the language is not free from ambiguity, from the application of the act to existing circumstances and necessities." Clarkson v. Ley, 106 N.J. Law 380.
Fears have been expressed that the enactments of 1932 might be invalid because they concern a testamentary disposition, although this is not indicated by the titles to the acts. That fear need no longer bother us since the adoption of our revised statutes, for each section in the revision stands as an independent, sufficient and valid enactment. Duke Power Co. v. SomersetCounty Board of Taxation, 125 N.J. Law 431; New Jersey BellTelephone Co. v. Newark, 134 N.J. Eq. 581.
The United States Circuit Court of Appeals, in an opinion by Judge Biddle, reached the same result as Vice-Chancellor Fielder in Field v. Fidelity Union Trust Co., 108 Fed. Rep. 2d521; 311 U.S. 169; 61 S.Ct. 176.
Our Court of Errors and Appeals in Wolf v. Wolf, 136 *Page 42 N.J. Eq. 403, refrained from intimating its opinion on the subject, and in Passaic National Bank and Trust Co. v. Taub,137 N.J. Eq. 544; affirming 136 N.J. Eq. 50, did not mention the statute. That case arose in the lifetime of the depositor-trustee and was an interpleader between his creditor and the beneficiary. The court awarded the fund to the creditor. In view of this decision, it cannot be said that a deposit in the style A in trust for B creates an immediately effective trust, subject only to the power of revocation of A, the donor. In the absence of fraud, A's creditors could not reach such a trust fund or compel him to exercise the power of revocation. Restatement —Trusts, § 330 comment o. But our statute does not in terms deal with the title to the account during the lifetime of the depositor. It only provides that in the event of his death, the fund shall be paid to the beneficiary, and that the representative of the depositor shall not be entitled.
In New York, without the aid of statute, a rule was developed which has spread throughout the country, that upon the death of the depositor, the beneficiary is entitled to the fund or so much as remains, unless there is proof that the depositor had a different intention. In re Totten (New York),71 N.E. Rep. 748. Restatement — Trusts, § 58. Our courts in Nicklas v.Parker, 71 N.J. Eq. 777, carefully considered the New York rule and declined to adopt it. But our legislature, by the statute under consideration, intended, I think, to enact a rule similar to that of New York. In New York, the title of the beneficiary is so slight while the depositor lives, that creditors of the latter can reach the fund. Beakes Dairy Co. v. Berns,112 N.Y. Supp. 529. See 48 Harv. L. Rev. 1168. And so the same result is reached as in Passaic National Bank v. Taub.
I conclude that upon the death of the depositor the statute either casts the title on the beneficiary or raises a presumption in his favor. There is no evidence in the present suit which overcomes the presumption.
Because of the interest of the state in this matter, I should make one more observation on the effect of the statute. Whatever title the donee-beneficiary may have during the lifetime *Page 43 
of the donor-depositor, is subject to a power of revocation which continues until the donor's death. This power of revocation is inconsistent with a right in the donee to the possession or enjoyment of the fund in the donor's lifetime. The donee's title does not embrace such a right.
In 1937, Mrs. Bear executed and delivered to one of the banks, the Franklin Savings Institution, a paper entitled "Agreement" on a printed form supplied by the bank and which reads as follows:
"This account and all moneys credited to it may be withdrawn upon the signature of the person in whose name the account is opened in trust for another. Upon the death of the person in whose name the account is opened in trust the Bank is authorized and directed to pay the entire balance of the account, together with interest, to the person in trust for whom the account is designated, provided he or she is of legal age at the time of such payment, and if a minor at such time, then payment may be made to the person in trust for whom the account is designated with the written consent of the legal representative of the deceased person in whose name the account was opened in trust. Such payment in either case shall be a complete discharge of the obligations of the Bank to all parties, and the rights of the legal representative of the deceased person, if any, shall be enforced only against the person to whom payment has been made in accordance with the terms of this agreement."
Whether title to the account be determined by the statute, or by the agreement, the result is the same. This is in harmony with the decision in Hickey v. Kahl, on an agreement identical with the one above quoted.
Miss Oestrich argues that the title of herself and her sister, Mrs. Smith, was joint and that she became the beneficiary of the whole fund upon Mrs. Smith's death. There is nothing in the style of the accounts to indicate whether the beneficiaries were to take jointly or as tenants in common. But equity does not favor joint estates. In the absence of words to the contrary, Mrs. Smith and Miss Oestrich became tenants in common. Aubrey v.Schneider, 69 N.J. Eq. 629; Whelan v. Conroy, 126 N.J. Eq. 607.
One-half of the fund in each bank belongs to Miss Oestrich, and no more.
Now for the devolution of Mrs. Smith's half of the fund. In New York, it is considered that upon the death of the named beneficiary in the lifetime of the depositor, the interest *Page 44 
of the beneficiary terminates and the depositor holds free of any trust, tentative or otherwise. The direction in our statute that payment be made to the beneficiary "or to his or her legal representatives," may indicate a different rule. However, Mrs. Smith died testate, making her mother, Mrs. Bear, her sole legatee and naming her executrix. I understand that her estate has been wound up and no creditors remain unpaid. So, either because of the nature of these bank account trusts, or by force of Mrs. Smith's will, the representatives of Mrs. Bear are entitled to one-half of the fund.