*344 Mr. Justice MILLER,
delivered the opinion of the court.
The question for our consideration is, whether the confiscation proceedings, as found in the special verdict, divested the title of the plaintiff in the lot ?
These proceedings do not come before us on a writ of error to correct any irregularities or mere errors of law in the court which rendered the judgment, but they come before us collaterally as the foundation of the defendant’s title.
According to the well-settled doctrine.in such cases, no error can be regarded here, or could have been considered in the court below on the trial, that does not go to the extent of showing a want of jurisdiction in the court which rendered the judgment condemning the property.*
Counsel for the plaintiff in error recognize this principle, but it is remarkable what a number of supposed errors in the proceedings are found by them to be jurisdictional. Almost every point that has been urged in the cases of Garnet v. The United, States, and Miller v. The Same, on writ of error directly to those confiscation proceedings, is here relied on as sufficient to defeat the jurisdiction. Looking to the errors alleged, it may safely be said that if half that has been so earnestly urged by counsel in these cases be well founded, the confiscation acts would be nugatory from the difficulty of putting them judicially in force, though their constitutionality were conceded.
■ Undoubtedly, by the individual, whose property is thus seized and condemned for acts of hostility to his government, the course pursued would be scrutinized with an eye quick to detect errors, and it is not strange that this critical spirit should affect the argument here. When to this is added the belief, long inculcated, that the Federal government, however strong in a conflict with a foreign foe, lies manacled by the Constitution and helpless at the feet of a domestic enemy, we need not be surprised that both the power of Congress to pass such a law as the one in question, *345 and the capacities of the courts to enforce it, should meet with a stout denial.
■ But we do not believe that the Congress of the United States, to which is confided all the great powers essential to a perpetual union — the power to make war, to suppress insurrection, to levy taxes, to make rules concerning captures on land and on sea — is deprived of these powers when the necessity for their exercise .is called out by domestic insurrection and internal civil war — when States, forgetting their constitutional obligations, make war against the nation, and confederate together for its destruction.
And we are further of opinion that where, the constitutionality of the confiscation acts being established, we are called upon to sit in review on the judicial proceedings of the inferior courts in the enforcement of these statutes, we are to be governed by the reasonable and sound rules applicable to analogous cases in the courts, and not by a system of procedure so captious, so narrow, so difficult to understand or to execute, as to amount to a nullification of the statute.
The framers of the act of July 17th, 1862, appear to have anticipated much of what has been since urged in regard to the mode of proceeding in the execution of that statute. Seeing very clearly that the cases of seizure under the law would be mainly on land, and would not, in that case, be cognizable as admiralty cases, and that being founded on the principle of confiscating enemy property, they were not strictly revenue cases; their attention was called to the proper mode of procedure in the enforcement of the law.
As the act was designed to introduce the principle of confiscating enemy property seized on laud, like that seized on water, applying the confiscation, however, to the property of a limited class of enemies, instead of to all enemies, it was conceived that the proceeding should be, in its essential features, analogous to those which the courts of admiralty were accustomed to use in property captured at sea. The same courts were to have jurisdiction, the same officers were to administer the law, and, as those courts were *346 already in possession of jurisdiction in revenue and admiralty cases, and as the analogies of those cases to the new jurisdiction conferred were supposed to present a mode of enforcing the law adapted to the latter in their main features, it was enacted that the proceedings under the statute should conform, as near as might be, to proceedings in admiralty or revenue cases; and, foreseeing also that in some respects they could not be strictly so conformed, the statute authorized the courts to make such orders, establish such forms of decrees and sale, and direct such deeds, when real estate shall be the subject of sale, as shall fitly and efficiently effect the purposes of the act.
Unquestionably, it was within the power of Congress to provide a full code of procedure for these cases, but it chose to give a direction on the subject which, adopting, as a general rule, a well-established system of administering the law of capture, looked to the fact that departures from that system might be necessary, and invested the courts with a discretion in that regard.
Five or six cases arising under this statute were argued before us at the last term, and, appreciating both' the difficulty and the importance of some of the points raised in argument, they were all ordered to be argued again at this term, and have, under that order, been ably and fully reargued. They have all.been disposed of but this, and the court have not hesitated, where there was a substantial departure from the mode of proceeding directed by the statute, to reverse the decree of the courts below in the eases which were here on error to those proceedings. And when we have found the proceedings to be conformable to the course of procedure of revenue and admiralty cases, we have held the decrees to be valid. The cases thus decided, and especially the case of Miller v. United, States, in effect dispose of all the objections taken to the action of the court in this case, even if that action were here for review directly, instead of being presented collaterally in another suit.
But, as one point was much and earnestly pressed as peculiar to this case, and as conclusive against the validity of *347 the confiscation proceedings, that point will be further considered.
It is argued that there was no such judicial seizure of the land which was condemned and.sold as to bring it within the jurisdiction of the court.
The record shows that the marshal of the District of Columbia, in which court the proceeding was had, and within the territorial jurisdiction of which court the land was situated, did seize the land under the instruction of the attorney of the United States for the district. No objection is made that this seizure was not full and complete. The order of the district attorney was directed to the marshal of the District of Columbia and described the property to be seized, and stated that the seizure was to be made for the purpose of instituting proceedings for its condemnation under the act of July 17th, 18G2. The marshal returned on this paper that he had seized the property and given notice to the tenants in possession, and he makes a part of this return the notice served on the occupants of the premises, in which he states that it is to be held subject to the order of the United States District Court for the District of Columbia. After this the libel was duly filed in that court, and a monition was issued from it to the same marshal, ordering him to give due notice and to attach the property and to detain the same in his custody until the further order of the court in the premises. To this monition no return was made by the marshal except a certificate of publication of notice.
The proposition of the plaintiff’s counsel is, that because no return of the marshal was made that he seized the property under this monition, the court had no jurisdiction of the case, and its subsequent condemnation and sale were void.
When we consider that it-was the same officer and the same individual who had already seized the property, and had it in his control and possession, and that his statement to that effect was before the court, with the addition that he held it subject to the order of the court, that he was the only executive officer of the court who could make the *348 seizure, the point raised seems to be as narrow and unsubstantial as the second seizure would be useless.
The argument is based upon the analogy of revenue seizures, which are always of personal and movable property, and which are always made in the first instance by some other officer or individual than the marshal, and which must be taken possession of by the marshal as the representative of the court. This is usually done under a process of the court for the purpose of bringing the property under its recognized control. And this is at once the reason, and suggests the limit of the two seizures in revenue cases so much relied on by counsel.
Now, suppose the property in this case had been personal property, how could the marshal make a seizure of that which was already in his manual possession ? Whose possession would he displace ? Could one hand represent the seizure under the monition and the other the seizure under the act of Congress ? And can it be seriously contended that this must be done to give the court jurisdiction, when the officer of the court held the property already for condemnation or discharge as the' court might order?
It may, however, be said that he should have made return of the writ, that he had seized and held the property under that. Such a return as to seizure would have been false, because he had seized it before and could make no second seizure, in fact, by taking it from his own possession. And he had already informed the court that he detained the property subject to its order.
The proceeding inaugurated by the district attorney is designed to bring the property before the court. It can have no other purpose or end, unless it is released by his order. The district attorney and the marshal are both officers of the court, and for that reason are selected to institute the proceeding by which the power of the court is called into exercise. When, therefore, the property is in the course of this proceeding seized by the mai’shal, and when with the filing of the libel all that has been done is brought before the court and it adopts and recognizes this seizure, the property *349 is held by him subject to the order of the court, and is under its control, and no second seizure by the same officer can be necessary.
In regard to real estate, the argument is still more forcible. The remarks of this court in Cooper v. Reynolds, already cited, are directly in point. Speaking of the various modes of acquiring jurisdiction, it was there said, that “while the general rule in regard to jurisdiction in rem requires the actual seizure and possession of the res by the officer of the court, such jurisdiction may be acquired by acts which are of equivalent import, and which stand for and represent the dominion of the court over the thing, and in effect subject it to the control of the court. Among this latter class is the levy of a writ of attachment or seizure of real estate, which, being incapable of removal, and being within the territorial jurisdiction of the court,-is for all practical purposes brought under the jurisdiction of the court by the officer’s levy of the writ and return of that fact in the court.”
When, therefore, the officer, as in this case, had seized the property for condemnation, and had made known that fact to the court, it was quite certain that it would be within reach of its process when condemned for sale, and when it became necessary to put the purchaser in possession of it. No change of the title or possession could be made, pending the judicial proceedings, which would defeat the final decree. The seizure was therefore, in our judgment, sufficient to subject the land to the jurisdiction of the court.
The judgment of the Supreme Court of the District of Columbia is therefore Affirmed.
Mr. Justice DAVIS expressed his concurrence in the judgment, though he stated that he had not been able to concur-in all that was said by the court in the preceding opinion.

 See Cooper v. Keynolds, 10 Wallace, 308, and the numerous cases there cited.