Union Chemical & Materials Corp., a Delaware corporation; Otto A. Cheska, Harry A. Clark, James H. Clark, Thomas B. Moses, D. L. Frawley, Stewart F. Hancock, John J. Harding, Gustave L. Levy, Mrs. H. Paul Nulligan, William B. Paul, Stephen Rooth and Richard L. Rosenthal, Directors of the Defendant Union Chemical & Materials Corp.; Pahl Kitch, Plateau Natural Gas Company, a Colorado corporation; Drillers Gas Company, a Kansas corporation; John D. Murchison and Clint Murchison, Jr., as partners doing business as Murchison Brothers,

Defendants Below, Appellants,

*vs.*

Curtis W. Cannon,
Plaintiff Below, Appellee.

*Supreme Court on Appeal—February 11, 1959.*

204

*Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington, for appellants.

*Howard L. Williams* and *William F. Lynch, II,* of Morris, James, Hitchens & Williams, Wilmington, for appellees.

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ., sitting.

SOUTHERLAND, Chief Justice: This case seems to be unique. Plaintiff Cannon filed a derivative stockholder's suit against certain defendants on behalf of Union Chemical & Materials Corporation, the corporate defendant. To compel the appearance of the individual defendants shares of stock of Union belonging to some of them were validly seized under the so-called sequestration statute (10 *Del.C.* § 366). Very shortly thereafter Union merged with Vulcan Materials Company, a New Jersey corporation, under the provisions of our merger statutes. See 8 *Del.C.* §§ 251 and 252.

What effect has the consummation of the merger upon the jurisdiction of the Court of Chancery over the property seized?

After the consummation of the merger certain of the defendants moved to dismiss the complaint on the ground that the situs of the seized shares was no longer in Delaware, and the court had lost jurisdiction over the property. The Chancellor denied the motion. The defendants appeal and renew the argument made below.

Neither the research of the able counsel nor the court's own research has disclosed a reported precedent dealing with the precise question presented. At bottom, we think, it involves a fundamental question of jurisdiction over property of a non-resident no longer within the reach of the court's process and hence not subject to sale.

There is no question here of the power to seize the property. All parties agree that the seizure was valid, but that seizure depended for its validity solely upon the fact that the situs of the shares was then in Delaware. 8 *Del.C.* § 169. Delaware does not have the entire Uniform Stock Transfer Act, and the certificate, for attachment purposes, is still regarded as only evidence of the stock. Consequently, there was no tangible property *in custodia legis*.

When the merger became effective the shares of Union were automatically converted into shares of Vulcan—a New Jersey corporation. The situs of those shares was thereafter the place or places where the certificates were situated. This is so because New Jersey has adopted the provisions of the Uniform Stock Transfer Act which subject shares in a New Jersey corporation to the jurisdiction of the state that has jurisdiction over the certificates.

What is the effect of the merger upon the attachment lien —admittedly a valid lien on the Delaware shares?

The general rule applicable to attachments of tangible personal property is well settled. If possession of such property by the court's officer is lost (otherwise than by a tortious removal by the owner), the lien is lost and with it the jurisdiction of the court over the property. 1 *Shinn on Attachment and Garnishment,* § 322; *Waples on Attachment and Garnishment,* § 615. The test of the continued efficacy of the lien is the continued possession of the officer. If that possession is lost by lawful removal of the property to a foreign jurisdiction, the lien is lost. *Drake on Attachment,* § 292d.

In attempting to apply this rule to the instant case we meet difficulty. We have here a case, not strictly of *removal* of attached property out of the jurisdiction, but of the conversion by law of the attached property into other similar property which by its nature has at once a situs out of the jurisdiction. Since the conversion took place by reason of the application of the Delaware merger statutes, it would seem plausible to say that the lien on the Delaware shares automatically become impressed on the New Jersey shares. The Chancellor so held.

■■ But this is to say that the lien has been transferred to the various certificates of stock representing the attached shares, which are now shares of a foreign corporation. Even if some or all of such certificates were in Delaware, there exists no process under our law by which the certificate itself may be seized. Nor can our attachment laws be construed to authorize the attachment of shares of a foreign corporation. See *Plimpton v. Bigelow,* 93 *N.Y.* 592. It is highly probable that most or all of the certificates, admittedly the property of non-residents, are situated out of this State. If these certificates are held to be subject to the attachment lien, how is the lien to be enforced? What jurisdiction have our courts to foreclose a lien on a non-resident's property situated in another State? Such a proceeding seems contrary to settled principles of law. That the jurisdiction of the courts of our State over the property of non-residents is limited to property within its control is fundamental. *Pennoyer v. Neff,* 95 *U.S.* 714, 24 *L.Ed.* 565.

> "It is so well settled that there can be no valid judgment against property when it is not in court, and so many authorities have been cited elsewhere in this treatise upon this point, that it is unnecessary to repeat them here to sustain the proposition." *Waples, op. cit.,* § 593.

The certificates of Vulcan now constitute property subject to the jurisdiction of the courts of the several states in which they are located.

In the same section of Waples above referred to (§ 593), the author makes this observation:

> "It is axiomatic that a thing cannot be in two courts at the same time. It cannot be even constructively in both. It follows that if one court is divested by another of the possession and control of the *res* against which a proceeding is pending, it cannot afterwards pronounce a decree against the property. This is true with respect to all proceedings *in rem,* including those limited to the interest of the debtor owner."

This is not of course a case in which it appears that any other court has exerted jurisdiction over any of the Vulcan shares of stock

of the defendants. But the power to do so exists. We cannot see how these Vulcan shares can at the same time have a situs in Delaware for attachment and sale, and a situs for these purposes in other states.

The Chancellor met this difficulty by relying on the provisions of our merger statute, § 252(d) and § 259(a).

Section 252(d) provides in part:

"If the corporation resulting from or surviving such consolidation or merger is to be governed by the laws of any state other than the laws of this State, it shall agree that it may be served with process in this State in any proceeding for enforcement of any obligation of any constituent corporation of this State, as well as for enforcement of any obligation of the resulting or surviving corporation arising from the merger. * * *".

Section 259(a), dealing with the consequences of a merger, provides in part:

"* * * but all rights of creditors and all liens upon any property of any of said constituent corporations shall be preserved unimpaired, and all debts, liabilities and duties of the respective constituent corporations shall thenceforth attach to said resulting or surviving corporation, and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it."

■■ The Chancellor was of opinion that Vulcan, the surviving corporation, was under a duty to preserve the seizure, and that since it is subject to suit in Delaware the shares of Vulcan stock could be sold and new certificates issued to the purchaser. We are compelled to disagree. The fallacy of this holding, in our opinion, lies in the assumption that jurisdiction over the corporation enables a court to exert jurisdiction over the property of its stockholder—the shares of stock—although neither the stockholder nor the property is now in court. There are of course many cases in which the injunctive powers of Chancery over a corporation may be used to enforce rights of a plaintiff in shares of corporate stock if jurisdiction over the person of the defendant is obtained. But the injunctive powers of Chancery over a corporation do not give the court jurisdiction over a non-

resident's property where the property is not within the jurisdiction. Cf. *Cities Services Co. v. McDowell,* 13 *Del.Ch.* 109, 119, 116 *A.* 4, holding that the writ of injunction may not be employed to accomplish the same purposes as a foreign attachment. The foundation of the court's jurisdiction here was the situs of the stock in this jurisdiction. Once that situs was transferred elsewhere the power of the court over the shares, and hence its jurisdiction, was lost.

As the Chancellor in effect said, this result is unfortunate. A valid lien is lost through no fault of the attaching creditor. The situation, in our opinion, stems from the failure of our merger statutes to provide, in cases of attachment of stock, for a deferment of the effective date of the conversion of any shares held under valid attachment until the attachment shall have been dissolved or otherwise disposed of, thus preserving the situs of the attached shares in this state. Legislation seems to be called for, but the court cannot supply it.

Some specific contentions of plaintiff must be dealth with.

1. Plaintiff invokes the general principle that jurisdiction once acquired is not defeated by subsequent events, and that where jurisdiction of the person or *res* has once attached it is not defeated by the removal of the person or the *res* beyond the jurisdiction of the court. 21 *C.J.S. Court* § 93, p. 143.

This general statement, as appears from an examination of the decisions cited, refers so far as here pertinent, to cases involving loss of jurisdiction over the *res* but retention of personal jurisdiction, as in mechanics lien proceedings where the lien fails but personal service has been obtained on the defendant. The principle is not applicable here.

2. Plaintiff argues that to permit a merger with a foreign corporation to defeat a prior attachment of shares of a Delaware corporation is to extend an invitation to fraudulent mergers. Plaintiff supposes a case of a sole stockholder whose shares have been seized to compel his appearance in a Delaware suit, and who resorts to the

mechanics of a merger solely to defeat jurisdiction. This is possible, but hardly likely. And if the facts are shown in time, we do not doubt the power of Chancery, through its injunctive power, to preserve its lien and its jurisdiction in such a case. Even if some unfortunate results may ensue they flow, as we have said, from the failure of the merger statutes to deal with the matter.

3. Plaintiff cites the sequestration statute (10 *Del.C.* § 366), subsection (c) of which provides:

"Any transfer or assignment of the property so seized after the seizure thereof shall be void."

The argument is that the attached shares were in effect assigned or transferred to Vulcan. Not so; conversion of shares by merger is not a transfer or assignment. The quoted statute merely embodies the familiar principle of law that the owner of property attached may not by alienating it defeat the attachment.. *Drake, op. cit.,* § 224. The Chancellor held the statute inapplicable and we agree with him.

4. It is argued that if the lien is held to be lost, creditors' rights will be lost, since plaintiff is in effect asserting a right of the corporation as a creditor of the defendants. The provisions of § 259(a), above quoted, relating to the preservation of creditors' rights and of liens against the corporate property, are cited. They are inapplicable. They deal with rights and liens of creditors against the property of the corporation, not with attachment liens against property of the stockholders.

Finally, it is argued that the admitted jurisdiction over Vulcan requires Vulcan to recognize and give effect to the attachment. This argument, which the Chancellor accepted, we have already considered and rejected.

We have carefully considered the unusual and difficult problem presented by this case. We are driven, with some reluctance, to the conclusion above set forth, namely, that the Court of Chancery has

now no jurisdiction over the Vulcan shares into which the attached shares were converted, and hence no power to proceed further against them.

It follows that the defendants' motion should have been granted.

The order of the Court of Chancery is reversed and the cause is remanded to that court with instructions to vacate the order and to enter an order in accordance with this opinion.