LINDSAY, Judge.
On March 7, 1986, Ford Motor Credit Company (FMCC) filed an “original petition with prayer for sequestration” against Woodrow Partee, a resident of Ohio, seeking payment of a debt due and recognition of FMCC’s chattel mortgage. In response, the Caddo Parish Sheriff’s Office seized a large (18 wheeled) truck belonging to Woodrow Partee. On April 3, 1986, a petition for intervention was filed by Dixie Trucks, Inc (Dixie). Dixie claimed a security interest in the truck by way of a mechanic’s lien. On April 9, a judgment was rendered in favor of FMCC, subject to resolution of the petition of intervention.' On April 23, FMCC filed a rule to show cause to determine the ranking of the conflicting privileges. A judgment was signed on June 17, 1986, which gave FMCC priority over Dixie. The truck was later sold at a sheriff’s sale and the proceeds were dispersed in accordance with the judgment. The proceeds of the sale were insufficient to fully satisfy the judgment of FMCC. Therefore, Dixie received no funds from the sale. Prior to the sale, Dixie devolu-tively appealed. Dixie contends that the trial court erred in finding that FMCC’s privilege on the seized truck was superior to its privilege. We do not address this issue, finding we lack jurisdiction.
Woodrow Partee, an Ohio resident, purchased a 1978 Ford CLT 9000 Truck from Tri-State Ford Truck Sales, Inc. in Ohio on January 20, 1984. The contract created a security interest in the vehicle in favor of FMCC. The following month, Partee entered into a substitution agreement (chattel mortgage) with FMCC whereby a different truck was substituted for the truck Partee had first purchased. The substituted vehicle, a 1979 Ford CLT 9000 with vehicle identification number X989VEG9898, is the same vehicle currently at issue in this suit.
Partee subsequently leased the 1979 Ford CTL 9000 truck to Eddie J. Payne. Payne took the truck to Texas where he re-registered the truck, obtained Texas license plates and began using it to haul freight for Mustang Transportation, Inc., a Texas corporation headquartered in Dallas, Texas.
On October 18, 1985, Payne was driving the truck through Shreveport, Louisiana, when the vehicle became disabled. Payne called Dixie Trucks, Inc. and Don Hale, service manager, went to inspect the truck. It was determined that the truck would have to be towed to Dixie’s shop and completely overhauled. The truck had run out of oil and the bearings had locked up. Thus, very extensive damage was done to the engine. After receiving an estimate of the cost of repair, Payne gave permission for Dixie to proceed with the repairs. In January of 1986, after Dixie had ceased working on the vehicle because Payne had failed to make a deposit on the cost of the repairs, Dixie received calls from FMCC concerning the truck and its location. FMCC had learned from Partee that the truck was in Louisiana and that the truck required such extensive repairs that it was no longer economically practical for Partee to continue making payments on the truck.
Both Dixie and FMCC filed separate suits for the amounts due. Writs of sequestration were issued and the truck was seized. In order to expedite resolution of the legal issues presented, Dixie intervened in FMCC’s suit against Partee. Dixie and FMCC subsequently agreed that a quick resolution of the ranking question was in the best interest of both parties. Prior to the trial of the ranking rule, a hearing was held in Dixie’s suit against Partee on the question of jurisdiction over Partee. The court ruled that while it did have in rem jurisdiction over Partee’s vehicle, the court lacked personal jurisdiction over Partee.
The trial court determined at the trial of the rule that FMCC’s privilege was superi- or to Dixie’s. Dixie filed a devolutive appeal, apparently not wanting to spend additional funds on a bond to support a suspen-sive appeal. The previously seized truck was sold at a sheriff’s sale and the proceeds from that sale were disbursed in accordance with the trial court judgment.
IN REM JURISDICTION
Jurisdiction in this case was established at the trial court level when the truck *921 owned by Woodrow Partee, an Ohio resident, was seized by the Caddo Parish Sheriffs Office pursuant to a writ of sequestration. No attempt was made to establish personal jurisdiction over Woodrow Partee. The only type of jurisdiction ever obtained in this case is in rem. LSA-C.C. Arts. 8 and 9.
Founded on physical power, the in rem jurisdiction of a state court is limited by the extent of its power and by the coordinate authority of sister states. The basis of the jurisdiction is the presence of the subject property within the territorial jurisdiction of the forum state. Hanson v. Denckla, 357 U.S. 235, 246, 78 S.Ct. 1228, 1236, 2 L.Ed. 2d 1283. FMCC contends that this court no longer has jurisdiction because the truck which was formerly seized has been sold and is no longer “within the grasp” of this court. Dixie answers this contention by relying on the theory of continuing jurisdiction; i.e., once jurisdiction is obtained, it continues until a final resolution of the issues occurs.
A. Continuing Jurisdiction
Continuing jurisdiction is based upon the concept that once the parties have invoked the jurisdiction of a court to decide a certain matter, that jurisdiction continues until a final resolution of the matter. Where jurisdiction over the person or the res has once attached, it is not defeated by removal of the person or the res beyond the jurisdiction of the court. Lukianoff v. Lukianoff, 166 La. 219, 116 So. 890 (1928); Wheeler v. Wheeler, 184 La. 689, 167 So. 191 (1936); Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953); DeFatta v. DeFatta, 352 So.2d 287 (La.App. 2d Cir.1977); Parrish v. Parrish, 448 So.2d 804 (La.App. 2d Cir.1984).
However, the above reference to the removal of the res beyond the jurisdiction of the court, and the pronouncements concerning continuing jurisdiction set forth in the above cited cases are not applicable to the facts of this case. Each of the cited cases deals with a question of status (divorce, separation, child custody, etc.). It is probable that the reference to jurisdiction of the res in the cited cases stems from the fact that “... sometimes proceedings affecting a status or relation, for instance a marital status, are referred to as proceedings quasi in rem.” 20 Am Jur 2d, § 120.
In Lukianoff v. Lukianoff, supra, the court cited United States v. Dawson, 56 U.S. 467, 15 Howard 467, 14 L.Ed. 775 (1853) as authority for the general rule that where jurisdiction of the res has once attached it is not defeated by removal of the res beyond the jurisdiction of the court. However, Dawson does not adequately support the general rule asserted in Lukia-noff. The issue presented in Dawson was whether a criminal defendant should be tried in the eastern or western federal district court for the State of Arkansas when the defendant was indicted while there was only a single federal district court for the entire state of Arkansas. Hence, Dawson is not applicable to the question presented here.
The cases cited by Dixie do not support the theory of continuing jurisdiction where jurisdiction is founded upon the seizure of property and that property is released before a final judgment is obtained. Therefore, we must analyze the structure of in rem jurisdiction to see if in rem jurisdiction has elements that would support its continuation even after the thing seized has been released.
B. Elements of In Rem Jurisdiction
The establishment of in rem jurisdiction was discussed in Cooper v. Reynolds Lessee, 77 U.S. 308, 10 Wall 308, 19 L.Ed. 931 (1870). The United States Supreme Court stated that jurisdiction over the res is obtained by a seizure under process of the court. It later stated that the jurisdiction of the court depended upon the seizure of the property, the one essential requisite to jurisdiction. Without this, the court can proceed no further. Likewise, see Tyler v. Defrees, 78 U.S. 331, 11 Wall 331, 20 L.Ed. 161 (1871).
The case of Pennoyer v. Neff, 95 U.S. 714, 5 Otto 714, 24 L.Ed. 565 (1878) arose from the following set of facts. In 1866 Mitchell obtained judgment in Oregon against Neff for a debt which was owed. Neff was not a resident of Oregon but did own land in that state. However, the land *922 was not attached or in any way brought under the jurisdiction of the court. Pen-noyer later obtained the land, which Neff claimed to still own, under a sheriffs deed passed upon a judicial sale of the property pursuant to Mitchell’s judgment. The United States Supreme Court ruled that an action brought against a non-resident is effectual only where property of the nonresident located in the state is brought under the control of the court and subjected to its disposition, or where the judgment is sought as a means of reaching such property or effecting some interest therein. Thus, the judgment rendered by the state court against Neff was without validity and did not authorize sale of the property in controversy. Pennoyer points out that one of the essentials of jurisdiction in rem is that the thing shall be actually or constructively within the reach of the court. United States v. Mack, 295 U.S. 480, 55 S.Ct. 813, 79 L.Ed. 1559 (1935); Hanson v. Denckla, supra.
All previous decisions on in rem jurisdiction were modified by Shaffer v. Heitner, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed. 2d 683 (1977) in that they were overruled to the extent that they are inconsistent with the standard established therein; namely, the requirement that the principles of International Shoe Company v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) be applied to a finding of in rem jurisdiction. Thus, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. The presence of property may bear on the existence of jurisdiction by providing contacts among the forum state, the defendant and the litigation. Although Shaffer v. Heitner adds additional requirements to be met before jurisdiction is found, it does not do away with the essential ingredient of in rem jurisdiction, the exertion of physical power over a thing.
C. Does In Rem Jurisdiction Continue?
In this case, the trial court validly exercised power over a truck owned by Partee. However, that truck has been sold pursuant to the judgment of the trial court. In selling the truck, the writ of sequestration originally issued by the trial court is dissolved. The location of the truck is no longer known. Neither this court nor the trial court now exercises any control over the thing. Thus, we must consider whether the loss of the thing seized causes jurisdiction to also be lost even though jurisdiction had previously attached.
In Federal Land Bank of Omaha v. Jefferson, 295 N.W. 855 (la 1941) the plaintiff sued in rem to enforce a foreign state judgment and attached property owned by the defendant. The defendant demurred, which was sustained, and a judgment dismissing the suit and attachment was issued. The plaintiff appealed, but not within a two day period provided by statute. The Iowa Supreme Court held that the preservation of the lien of attachment was necessary to preserve jurisdiction of the subject matter of the litigation. The extin-guishment of the lien of attachment ended the jurisdiction of the court over the subject matter. ' Insofar as the appellant sought to have the judgment in rem against the real estate, it was necessary to preserve the lien of attachment against that real estate to maintain the jurisdiction of the court over the subject matter. When the lien was lost, jurisdiction over the res was lost.
A similar decision was reached in Union Chemical and Materials Corporation v. Cannon, 38 Del.Ch. 203, 148 A. 2d 348 (1959). Therein, the plaintiff filed a derivative action and had certain shares of stock seized in order to force shareholders to answer his suit. The stocks seized were that of Union Chemical and Materials Corporation. However, shortly after the seizure, Union Chemical and Materials Corporation merged with Vulcan Materials Company, a New Jersey Corporation. The defendants moved to dismiss the suit because the situs of the seized stock was no longer in Delaware and therefore, jurisdiction was lost.
The Delaware Supreme Court determined that the seizure was valid, but it depended for its validity upon the situs of the shares being within Delaware. Once *923 the shares of Union were converted to shares of Vulcan, the situs of the shares changed to where the new certificates representing the stock were located.
Plaintiff relied on the general statement that jurisdiction once acquired is not defeated by subsequent events, and that where jurisdiction of a person or res has once attached it is not defeated by the removal of the person or the res beyond the jurisdiction of the court. The Delaware Supreme Court determined that this general statement referred to cases involving loss of jurisdiction over the res but retention of personal jurisdiction, as in mechanic’s lien proceedings where the lien fails but personal service has been obtained on the defendant. The Delaware Supreme Court went on to hold that if possession of seized property by the court’s officer is lost (otherwise than by tortious or other improper removal by the owner), the lien of attachment is lost and with it the jurisdiction of the court over the property. The test of the continued efficacy of the lien of attachment is the continued possession of the attached property. If that possession is lost by lawful removal of the property to a foreign jurisdiction, the lien of attachment is lost. Thus, jurisdiction no longer exists.
We determine that the rational of Federal Land Bank of Omaha v. Jefferson, supra, and Union Chemical and Materials Corporation v. Cannon, supra, is applicable in this case. The res, a truck, was originally seized by the Caddo Parish Sheriff’s Office. By virtue of this seizure, the trial court obtained in rem jurisdiction. The sheriff no longer has possession of the truck. Once the object giving rise to jurisdiction is gone, jurisdiction is also gone. There is no longer any property against which a lien or privilege can operate. Hence, any judgment rendered may be moot. To protect jurisdiction, the party seeking an appeal should appeal suspen-sively or obtain an injunction to stop the sale. Appellant did not take those steps in this case. Accordingly, this court now lacks jurisdiction to adjudicate this case and reach any decision because the thing upon which jurisdiction was based is no longer under the control of the court.
Appeal dismissed. All costs of this appeal are assessed to intervenor/appellant, Dixie Trucks, Inc.
APPEAL DISMISSED.
ON APPLICATION FOR REHEARING
Before HALL, JASPER E. JONES, NORRIS, SEXTON, and LINDSAY, JJ.