69 So.2d 56 (1953)
PACIFIC FINANCE LOANS
v.
GUIDRY.
No. 20131.
Court of Appeal of Louisiana, Orleans.
December 15, 1953.
Rehearing Denied January 18, 1954.
Writ of Certiorari Denied March 22, 1954.
*57 Montgomery, Barnett, Brown & Sessions, New Orleans, and Arthur B. Hammond, Jr., Baton Rouge, for plaintiff-appellant.
Clarence F. Favret, New Orleans, for defendant-appellee.
JANVIER, Judge.
This matter is before us on appeal by plaintiff corporation from a judgment of the Twenty-ninth Judicial District Court for the Parish of St. John the Baptist, maintaining exceptions of no cause of action and no right of action and, on the exceptions, dismissing plaintiff's suit.
The plaintiff corporation alleged that it is the holder of a note secured by a chattel mortgage on a certain automobile which "was executed, signed and recorded in full compliance with the Texas law and is governed exclusively by the laws of that State." It further alleged that "under Texas law, a chattel mortgage on property subsequently removed from the State where the mortgage was executed is effective against third parties, notwithstanding it is not recorded in the State to which it is removed."
Plaintiff further alleged that the automobile is now in the possession of Francis Guidry, the defendant, a resident of the Parish of St. John the Baptist; that it lies within his power to dispose of the said automobile, and that a writ of sequestration is necessary to protect the interests of plaintiff, and the plaintiff then prayed that the said automobile be sequestered and sold and that the proceeds of the sale, so far as might be necessary, be devoted to the payment of the claim due to plaintiff and secured by the chattel mortgage.
In a supplemental petition it is alleged that when the defendant, Francis Guidry, purchased the automobile from its former owner, John McDonald, he did not obtain from his vendor an affidavit stating that there were no mortgages bearing upon the said automobile and that there was no money due thereon, and that as a result of this failure to obtain the said affidavit as required by the Louisiana Chattel Mortgage Act, LSA-R.S. 9:5362 et seq., the said purchaser, Guidry, made himself personally liable to plaintiff as holder of the chattel mortgage, and in this supplemental petition, plaintiff prayed for a judgment in personam against the said Guidry for $1,339.98, with interest at the rate of 10 per cent per annum from July 1st, 1952.
The particular provision of the Revised Statutes upon which plaintiff relies in its demand for a personal judgment reads as follows:
"It shall be unlawful for a resident of any parish to purchase the movable property described in R.S. 9:5351 from *58 any nonresident of such parish, without first obtaining an affidavit from the nonresident that there is no mortgage on the property, nor any money due for the purchase price thereof, and the purchaser who shall buy the movable property without having obtained the affidavit, shall be personally liable to the creditor for the debt secured by the property."
The defendant, Guidry, as we have said, filed exceptions of no right of action and no cause of action to both the original and the supplemental petitions.
It is the contention of plaintiff that a chattel mortgage executed in another state is enforceable in Louisiana against property found in this State, even though the chattel mortgage is not recorded in this State and even though the mortgaged property was secured by the owner against whom the suit is brought for value and in good faith and on what appeared to be a good, valid merchantable title, provided the holder of the note and mortgage did not consent to the removal of the property to Louisiana.
The exact legal question which is thus presented was considered by us in General Motors Acceptance Corporation v. Nuss, La.App., 192 So. 248, and this Courtthe author of this opinion dissentingheld that if the defendant who was the owner of the automobile had obtained it for value and in good faith and the mortgage executed in a foreign state had not been recorded in this State, the title which the purchaser obtained would not be subject to the chattel mortgage, even though the holder of the chattel mortgage had not consented to the removal of the property from the state in which the mortgage was executed and even though the said holder did not know that it had been removed.
When this Court so held, the Supreme Court granted a writ of certiorari and reversed our decision, (195 La. 209, 196 So. 323) holding, according to Syllabus No. 7:
"A chattel mortgage covering an automobile which was executed and recorded in Missouri would be given effect in Louisiana under rule of comity even as against innocent parties in Louisiana acquiring title to or lien upon automobile, notwithstanding mortgage was not recorded in Louisiana, * * *."
Counsel for defendant-appellant, conceding that were it not for three facts to which he now points there could be no distinction between the facts of that case and those now under consideration by us, argues that here there are three distinguishing facts, and in addition he argues that the decision of the Supreme Court in the Nuss case is erroneous and should not be followed.
The three facts on which counsel relies in his effort to distinguish that case are:
1. He maintains that that decision resulted largely from the fact that there there was involved a chattel mortgage which had been executed in the State of Missouri, which State recognized and enforced chattel mortgages of other States though not recorded in Missouri. In other words, he says that the decision of our Supreme Court resulted from a desire to recognize here chattel mortgages of other states which had indicated that they would recognize chattel mortgages of this State.
2. Counsel also says that the decision of our Supreme Court was rendered in 1940, which was prior to the enactment of our present Certificate of Title Law which was enacted in 1950 as Act 342 and is to be found in our LSA-Revised Statutes in Title 32, section 701 et seq., and counsel argues that the Certificate of Title Law should be interpreted as favoring the holder of a title as against the claim of a mortgage holder whose mortgage is not recorded in this State, even though it may have been valid and properly recorded in the State in which it was executed.
3. Counsel for defendant-appellant also directs our attention to the decision of our Supreme Court in G. F. C. Corporation v. Rollins, 221 La. 166, 59 So.2d 108, and he argues that that case is authority for the view that, in such case as this, the holder *59 of the foreign chattel mortgage who seeks its recognition here must do more than merely allege that the removal of the car to this State was without his knowledge and consent, and must also allege that due diligence was exercised in an attempt to locate the car after its removal was discovered, and he contends that since there is no allegation as to due diligence, the exceptions, for this reason also, were properly maintained.
When we come to consider the argument that the decision of our Supreme Court in the Nuss case was based on comity and was rendered in favor of the holder of the mortgage which was executed in Missouri because the State of Missouri had, by comity, similarly recognized mortgages executed in other states, though not recorded in Missouri, we note, as counsel says, that our Supreme Court did discuss this question of comity, saying:
"If the test of reciprocity should be regarded as the sole basis for the recognition of the rule of comity, the courts of this State should certainly recognize and enforce a Missouri chattel mortgage, because the courts of Missouri would certainly recognize and enforce a Louisiana chattel mortgage. This is so, because the courts of Missouri have repeatedly, and without exception, recognized and enforced chattel mortgages of other states not recorded in Missouri. * * *"
But we also note that it is very evident that our Supreme Court did not base its decision in the Nuss case on that comity which is desirable among the several states, but on the broader ground that a mortgage properly executed and recorded according to the law of the state of its execution should be recognized in Louisiana though not recorded here. In the decision of the Nuss case appears the following language:
"We do not think that the courts of one state should resort to the reciprocity doctrine in order to defeat the rights of a mortgage holder simply because the courts of the state where the mortgage was granted would deny similar relief to one of its citizens holding a mortgage granted in his state. It was so held in Hart v. Thompson [Oliver Farm Equipment Sales Co.], 37 N.M. 267, 21 P.2d 96, 87 A.L.R. 962, decided in 1933."
Counsel for defendant-appellant characterizes the above quoted statement from the Nuss case as merely obiter dictum and maintains that the result should be different where the other state does not recognize such a mortgage executed in Louisiana. We feel that our Supreme Court has in the above statement clearly evidenced a contrary view. But even if counsel is correct in his view, that it is only where comity comes into play that the foreign mortgage should be recognized here, he is "hoist with his own petard" for it appears quite certain that in Texas, the State in which the mortgage now under consideration was executed, it is recognized by the highest court that the public policy of that State requires that such a foreign mortgage, though not recorded in Texas, should be given recognition there.
A reading of that decision of the Supreme Court of Texas on this question evidences this, for in Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843, 848, it was so declared. In so deciding the Supreme Court of Texas in effect overruled earlier decisions.
The Court with reference to its earlier jurisprudence said:
"The great weight of authority which now conflicts with the rule announced by this Court in 1921 in the cases cited above, the radical changes in conditions relating to the use of automobiles within recent years, and the enactment of Article 1436-1 of the Penal Code, are new factors which furnish a fresh standpoint from which to examine the important question presented to us in this case."
*60 The Court also said:
"* * * the more recent decisions indicate a tendency to disregard the rule of comity and enforce the lien. * * *"
The Court then held that the foreign chattel mortgage was enforceable against an innocent purchaser even though the chattel mortgage had not been recorded in Texas.
Of course, the law of Texas as evidenced by the decision of the Supreme Court of Texas in the Fretz case could not be proven by the mere offering of that decision, and, on a trial on the merits if it became necessary to prove what is the law of Texas on the subject, counsel would have to produce evidence similar to such as might be required to prove any other fact. In Taylor v. Terzia, 171 La. 1040, 132 So. 781, 783, our Supreme Court so stated:
"Counsel for the plaintiff cite two decisions of the Supreme Court of Arkansas, which they contend support plaintiff's position that the action of state bank commissioner in levying the assessment on the defendant was conclusive both as to the necessity for and the amount of the call. These decisions are Davis, Bank Commissioner, v. Moore, 130 Ark. 128, 197 S.W. 295, and Aber v. Maxwell, State Bank Commissioner, 140 Ark. 203, 215 S.W. 389. But these decisions were not offered in evidence in the court below, and we cannot regard them as evidence here. The interpretation as well as the language of the laws of a sister state must be proved as a fact in a case; otherwise, we cannot consider such interpretation. * * *"
See, also, Welch v. Jacobsmeyer, 216 La. 333, 43 So.2d 678; Sheard v. Green, 219 La. 199, 52 So.2d 714.
Although we cannot at this time accept as proof of the law of Texas the decision of its Supreme Court, nevertheless we think that we may assume, should such proof seem necessary, that plaintiff would offer proof of that law when the matter is tried on the merits in the District Court.
Our conclusion on this point is that, regardless of what position the Courts of Texas may take as to the enforceability of a Louisiana chattel mortgage not recorded in Texas, our own Supreme Court has clearly held that in Louisiana we recognize a mortgage executed in another State even though it may not be recorded here.
And we pass to a consideration of the question of whether our Certificate of Title Law, adopted since the decision in the Nuss case, requires a different result now, and we note at once that on this identical question the Supreme Court of Texas in the Fretz case considered the effect of the adoption in the State of a Certificate of Title Law, and held that such a statute did not interfere with the recognition in Texas of a foreign mortgage.
When we come to consider our own Certificate of Title Law we are unable to see anything therein which could be interpreted as requiring that a foreign chattel mortgage, valid under the laws of the state in which it was executed and properly recorded there, should not be held to be enforceable against a title holder in Louisiana, even though the title holder here secured his title in good faith and after taking such measures as were available to ascertain that the title was clear. This, of course, should be true only where the holder of the mortgage alleges and can show that the vehicle was removed without his knowledge or consent and when it appears that he has been properly diligent in endeavoring to ascertain the facts and to protect his rights.
And we cannot agree that the exception of no cause of action should be maintained merely because the petition contains no allegation that due diligence was exercised. In the Rollins case, supra, our Supreme Court recognized the doctrine which it had announced in the Nuss case, saying that the doctrine should be limited to cases in which "the foreign mortgagee did not know of *61 or consent to the removal of the property" to Louisiana. G. F. C. Corporation v. Rollins, 221 La. 166, 59 So.2d 108, 110.
The absence of knowledge and consent is, of course, essential to the recognition of the mortgage, and it necessarily follows that the mortgagee who seeks the recognition of his foreign mortgage must allege and must be prepared to prove lack of knowledge and lack of consent, but surely the rule as to the lack of knowledge and lack of consent which was announced in the Nuss case and followed in the Rollins case does not include a requirement that the mortgagee must allege due diligence. There must, of course, be due diligence on the part of the mortgagee, but that there was no due diligence is a fact which may be set up in defense, or which may be availed of as a defense if shown by the evidence when the matter is tried.
Surely such a suit as this need not be dismissed on exceptions merely because the mortgagee has failed to allege that due diligence was exercised. Even if such an allegation is necessary, its absence would not justify a dismissal of the suit on exceptions. The plaintiff should be given an opportunity to amend and by amendment to allege due diligence.
It is also argued that even if the exception of no cause of action, which is directed at the original petition, should be overruled, nevertheless the exception which is directed at the supplemental petition should be maintained. Counsel for defendant cites Allison v. Aetna Life Ins. Co., La.App., 158 So. 389, 391, and argues that it was there held that, where two separate demands are contained in one petition, an exception may be maintained as to one of the demands even where it may not be maintained as to the other. And the following language is pointed to as indicating that view:
"It is well settled that an exception of no cause or right of action should be overruled if any cause at all is stated; that, where there are distinct and separate demands, the sufficiency of the allegations as to each may be separately attacked. * * *"
We entertain considerable doubt on this question, but find it unnecessary to decide whether the exception should be maintained as to one part of the demand where it is felt that it should be overruled as to the other, and we say this for the reason that we do not think that the exception is well founded even as to the demand for a personal judgment against the defendant.
The contention, that the exception should be maintained insofar as it applies to the demand for the judgment in personam, is based on the statement of counsel that it appears that when the present defendant purchased the automobile, he did secure what his counsel says is in effect an affidavit that there were no liens, mortgages or other encumbrances bearing on the automobile which he purchased.
The charge is made in the petition that no such affidavit was obtained, and counsel for appellant says that this charge is not well founded, and he points to certain documents which were offered in evidence when the exceptions were tried in the District Court.
It is well settled that where a matter comes up on an exception of no cause of action no evidence may be resorted to, and that that issue must be decided on a determination of whether, if the allegations of the petition are true, a cause of action is stated. Yet, when this matter came up for hearing on the exceptions of no cause of action, the defendant offered in evidence, among the documents to which we have just referred, two applications for certificates of title, one made by him when he purchased the automobile from his vendor, John McDonald, and the other made by John McDonald when he purchased the automobile from Mel Jacobson Motors, the former owner. In both these applications, which are made on forms provided by the Motor Vehicle Division of the Department of Revenue of the State of Louisiana, and which were executed in compliance with the provisions of the Certificate of Title Law, *62 there was a blank space for the listing of any chattel mortgages which might bear against the said automobile, and in neither of these forms did the mortgage held by the present plaintiff appear, and in the form executed by the present plaintiff no mortgages appeared at all.
Counsel for defendant points to these forms and argues that they show that when defendant bought the automobile from McDonald, he did obtain the affidavit referred to and consequently he cannot be held personally liable to the holder of the mortgage. Even if it be conceded that defendant on a hearing of the exceptions was properly permitted to introduce these documents in evidence and even if it be further conceded that if McDonald, the vendor, who sold the car to defendant had signed the affidavit which in effect showed that there were no mortgages on the car, still the documents relied on would avail nothing to defendant, since the one which shows the transfer by McDonald to the defendant contains no affidavit made by McDonald to the effect that no mortgages existed against the car.
On the rear of the document there is a blank for the transfer of the car from the owner to a purchaser. Although the copy which is in the record does not show that the original was signed at all, it may be assumed that the original was signed by McDonald, but the statement made therein cannot be construed as an affidavit by McDonald to the effect that there were no mortgages against the car, for it merely reads as follows:
 "Transfer of Registration
 "This is to certify that I have this
 ___ day of ____, 19__, sold or traded
 the vehicle described on the reverse
 side to
_____________________________________________
 (Name of Purchaser)
_____________________________________________
 (Address)
 __________________________________
 Signature of Owner (Seller)"
Nowhere is there such affidavit signed by the vendor as is required by the Certificate of Title Law. Whether such an affidavit was obtained is a matter which will be tried when the case comes up in the District Court. On the trial of the exceptions of no cause of action, all that is interesting is that the charge is that no such affidavit was obtained.
Being of the opinion that the exceptions of no cause of action should not have been sustained, it is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and it is now ordered that the exceptions be and they are overruled and that the matter be and it is remanded to the Twenty-ninth Judicial District Court for the Parish of St. John the Baptist for further proceedings consistent with the views herein expressed and according to law; defendant-appellant to pay the costs of this appeal, all other costs to await a final determination of the matter.
Reversed and remanded.