In re James D. DECKER, and Mary Hill
Decker, Debtors.

Bankruptcy No. 480–0037–LC.

United States Bankruptcy Court,
W. D. Louisiana,
Lafayette—Opelousas Division.

April 14, 1981.

Robert W. Fenet, Lake Charles, La., for
Chrysler Credit Corporation.

Ronald J. Bertrand, Lake Charles, La.,
for trustee, William C. McClanahan.

## OPINION

RODNEY BERNARD, Jr., Bankruptcy
Judge.

Hearing was held on January 8th on an
opposition of Chrysler Credit Corporation to
the trustee's Objection to the Claim.

### STATEMENT OF THE FACTS

James Decker, the debtor herein, pur-
chased a 1977 Dodge Aspen in Birmingham,
Alabama on about August 12, 1978. At the
time of the purchase Mr. Decker told the
salesperson that he was in the service, as-
signed to Fort Polk, Louisiana; he was

home on leave and planned to go right back to Louisiana with his car. He also mentioned that his assignment in Louisiana was to be a fairly lengthy one. Mr. Decker gave his permanent address in Alabama. After the purchase of the automobile he returned to Louisiana with his wife and newly purchased automobile. From Louisiana Mr. Decker made payments on the car. The address on the payment book shows Mr. and Mrs. Decker's Fort Polk, Louisiana address. All the checks to Chrysler showed Mr. and Mrs. Decker's Fort Polk address. An extension agreement for one of the debtors' monthly payments was made to and from the debtors' Fort Polk address. Mr. Decker has not physically lived in Alabama since 1970, neither Mr. nor Mrs. Decker own any property in Alabama.

Mr. and Mrs. Decker filed a voluntary petition in bankruptcy on July 25, 1980. The trustee Mr. William G. McClanahan objects to the claim filed by Chrysler Credit Corporation and asks that the claim be reclassified as unsecured. The trustee contends that for Chrysler's claim to be secured it must have perfected it's lien in Louisiana. The trustee further contends the creditor had knowledge of the continuous presence of the automobile in Louisiana since 1978 but has taken no steps to file its lien in accordance with Louisiana law.

Chrysler Credit Corporation, the creditor herein, contends that Mr. Decker is still a domiciliary of Alabama and is only present in Louisiana because of military compulsion. The creditor thus insists the state of the debtor's domicile should control and only recordation in Alabama is necessary to perfect the lien as against third parties.

## CONCLUSIONS OF LAW

The outstanding issue in this case is whether Chrysler's lien has to be recorded in Louisiana in order to be effective as to the trustee. In order to reach this question, the questions of whether Alabama law or Louisiana law should be applied and the recordation requirements of these two jurisdictions must be considered. Lastly, the analysis must consider whether the fact that the debtor's presence in Louisiana due to military compulsion would alter the choice of law considerations.

The mere fact that chattels are taken across state lines does not change property interests which already exists in the goods. The authorities on conflicts of law do not disagree on this principle. Generally, whenever a state does not recognize an interest created under the law of another state, it is because the new interest which is recognized arose out of a new transaction involving the chattel after its removal. *American Conflicts Law 3rd*, Robert A. Laflar.

If merely bringing a chattel across state lines operated to invalidate a lien it would be a violation of the due process clause of the Federal Constitution. To deprive an owner of an interest in property valid in the original state, without a judicial proceeding, a consensual or other transaction to which the law would attach, would deprive the interest holder of his property. The principle of comity would also prevent the second state from arbitrarily refusing to recognize an interest created by the laws of a sister state. *American Conflicts Law, 3rd; supra.*

Alabama, has adopted the Uniform Commercial Code. The U.C.C. provides for third party claimants by requiring that a security interest which is valid at the time the collateral is removed to another state, will continue to be valid and subject to the law of the state where the security interest was created for four months after removal. The four month period is allowed so that the creditor has an opportunity to refile or perfect the interest according to the laws of the second state. After this four month period the laws of that state to which the collateral has been removed then govern the interests of the creditor, debtor and third parties. "Conflict of Laws: Security Interests in Movables". 39 *Louisiana Law Review* 913 (1975).

Considering the conflicts of laws rules as well as the Alabama U.C.C. principles, it appears that Chrysler's interest in the chat-

tel is valid and recognized in other states as between the parties themselves. As to transactions between third parties in the state of removal, Alabama law would protect the creditor's interest for four months. As to transactions which arise in the state of removal Louisiana law could clearly apply.

The Vehicle Certificate of Title Law, Louisiana Revised Statutes 32:710, rather than the Chattel Mortgage Act, Louisiana Revised Statutes 9:5351 through 9:5365, applies to vehicles. This is reflected in La R.S. 32:701 which reads as follows:

> On and after December 15, 1950, the sole and exclusive method of executing and recording chattel mortgages and the priority of such mortgages which are subject to this Chapter, shall be through compliance with the provisions of this Chapter. All other chattel mortgages do not come within the provisions of the Chapter and shall continue to be governed exclusively by existing laws, particularly R.S. 9:5351–9:5365.

Under the Louisiana Vehicle Certificate of Title Act, La R.S. 32:701 through 32:734, Louisiana requires recordation of a title certificate in order to affect third parties when a vehicle is housed in Louisiana, or present in Louisiana for purposes other than transportation through Louisiana. Recordation is also required if the mortgagee has consented to a sale or other disposition of the property in Louisiana. These principles are reflected in La R.S. 32:710(B) and (C), which are as follows:

> B. In order to affect third persons the chattel mortgage must be by authentic act or by private act duly authenticated in any manner provided by law, except as to a mortgage given by a dealer to secure a floor plan loan. Every such mortgage other than one securing a floor plan shall be effective as against third persons as of the time of its execution by the parties if the chattel mortgage is received and such receipt is validated by the office of the commissioner within fifteen days after such date of execution. Provided that in the case of an authentic act the time of

execution shall be the date of execution before a notary public or other duly authorized officer and if by duly acknowledged private act the date of signing by the parties shall be the time of execution. If the chattel mortgage is not received and such receipt is not validated by the office of the commissioner within fifteen days after such date of execution it shall be effective as to all persons from the date such chattel mortgage is delivered to the commissioner, and the claim shall be superior in rank to any privilege or preference arising subsequently thereto. The commissioner shall, upon request of any person, issue a certification whenever the chattel mortgage is delivered to his office.

> . . . .

> C. The holders of mortgages on motor vehicles, who expressly or impliedly consent to such vehicles being placed on sale by the owners thereof in the State of Louisiana in the ordinary course of business shall be precluded from asserting the said floor plan mortgage or the lien created by it against bona fide retail purchasers in actual good faith of said vehicles. . .

Louisiana case law has been consistent in terms of foreign security interests in chattels present in Louisiana. In the *Pacific Finance v. Guidry* case, 69 So.2d 56 (La. App.1954), the court noted that:

> . . . regardless of what position the courts of Texas may take as to the enforceability of a Louisiana chattel mortgage not recorded in Texas, our own Supreme Court has clearly held that in Louisiana we recognize a mortgage executed in another state even though it may not be recorded here. * * * When we come to consider our own Certificate of Title Law, we are unable to see anything therein which could be interpreted as requiring that a foreign chattel mortgage, valid under the laws of the state in which it was executed and properly recorded there, should not be held to be enforceable against a title holder in Louisiana, even though the title holder here secured

his title in good faith and after taking such measures as where available to ascertain that the title was clear.

This of course, should be true only where the holder of the mortgage alleges and can show that the vehicle was removed without his knowledge or consent and when it appears he has been properly diligent in endeavoring to ascertain the facts and to protect his rights.

The burden of proof in order to show the creditor had knowledge and consented to the removal of the chattel rests with the debtor. *G.F.C. Corp. v. Rollins*, 221 La. 166, 59 So.2d 108 (1952).

Since the *Rollins* case, supra, Louisiana case law has been consistent in following the rule that recognition of foreign security interests is "specifically limited to cases in which . . . the foreign mortgagee did not know or consent to the removal of the property." *G.F.C. Corp. v. Rollins*, supra.

In the case of *In Re Leggett*, 505 F.2d 120, (5 Cir. 1974); the vehicle was housed in Louisiana for 16 months without recordation in accordance with Louisiana Law. In deciding whether a seizing creditor was entitled to a preference over the foreign security interest the court noted:

Commercial Credit's failure to take steps necessary to perfect its foreign security interest in Louisiana for some sixteen months after it unquestionably knew of the presence of the collateral in Louisiana makes unavailing the protection that Louisiana courts may extend to a foreign creditor whose collateral has been moved into that state without his knowledge or acquiescence. The Bankruptcy Court correctly held the claimant's security interest in the mobile home invalid against the bankruptcy trustee.

█ This approach to recognition of foreign mortgages is the rule in the majority of the states as well as being consistent with the conflict of law consideration of predictability. See *American Conflicts Law 3rd*, supra. In the instant case the creditor knew the car was to be regularly kept in Louisiana since its purchase in 1978. Now, two years later the creditor could hardly be called diligent in preserving its rights, as far as Alabama U.C.C. requirements or Louisiana law is concerned. Judge Andrus in the case of *Dragon v. Gulfway National Bank*, No. B–74–1706, decided in the Western District of Louisiana, Lafayette Division, cited the *Rollins* case as well as the *Guidry* case. Judge Andrus commented that the four month period allowed for perfection under the U.C.C. established a widely adopted test for reasonableness of time, and a year's lapse after the creditor knew of the removal of the property to Louisiana made the lien ineffective as against the bankruptcy trustee.

█ In reviewing the above analysis, it does not appear that presence in Louisiana being due to military compulsion could alter the result. The purpose of recordation is to make third parties aware of encumbrances on chattels present in Louisiana. This covers all chattels in Louisiana whether the owners are domiciliaries of Louisiana or not.

█ In the Chattel Mortgage Act, La R.S. 9:5351 et seq., chattels must be recorded both in the parish of the title holder's residence as well as the parish where it is regularly kept. Foreign mortgages are also subject to this requirement and must be recorded in the Parish where regularly kept if the owner is a domiciliary of another state. The domicile of the owner does not alter this result. La R.S. 9:5354 contains this principle and reads as follows:

Whenever a person who is domiciled in another state enters into a contract with another regarding personal property and the security interest comparable to a chattel mortgage is created by such contract, the holder or owner of such foreign security interest may perfect his rights after the property has been transferred into the state of Louisiana as hereinafter provided.

If the owner of the foreign security interest does not have notice that the property has been transferred, such security interest is effective against third persons for a period of sixty days from the notice thereof. . . .

Provided, however, that the holders of such foreign security interests of chattel mortgages on motor vehicles, chattels, property or merchandise of any nature or kind who expressly or impliedly consent to such chattels being placed on sale by the owner thereof in the state of Louisiana and in the usual course of business shall be precluded from asserting said security interest or mortgage of the lien created by it against bona fide retail purchasers in actual good faith of said motor vehicles, chattels, merchandise or property.

In light of the above case law and in consideration of the conflicts of law rules it is essential for a foreign security interest holder to perfect his lien in Louisiana within a reasonable time after he knew of the continuous presence of his collateral in Louisiana. As the above cases reflect, the unperfected security interest is not valid as to the bankruptcy trustee in his position as a bona fide purchaser, see 11 U.S.C. § 544(a)(3).

Judgment in accordance with the above will be signed upon submission. All costs of this proceeding will be paid by the creditor.