401 So.2d 590 (1981)
SCOTT TRUCK & TRACTOR COMPANY OF ALEXANDRIA, INC., Plaintiff-Appellant,
v.
Billy W. DANIELS, et al., Defendants-Appellees-Intervenors.
No. 8252.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1981.
Rehearing Denied August 13, 1981.
Provosty, Sadler & deLaunay, David P. Spence, Alexandria for plaintiff-appellant.
Voelker, Ragland, Brackin & Crigler, Charles R. Brackin, Lake Providence, for defendants-appellees-intervenors.
Before CULPEPPER, FORET and LABORDE, JJ.
LABORDE, Judge.
This ranking case presents a contest between a Texas security interest held by plaintiff-vendor and a Louisiana lessor's privilege held by intervenor-lessors. These two competing interests involve an International Harvester 815 Combine. The lower court maintained the right of priority claimed by the Louisiana lessors. We reverse.
On May 23, 1977, plaintiff-vendor, Scott Truck & Tractor Company of Alexandria, Inc., (the Company) sold the combine in question to Billy W. Daniels (Daniels). Daniels at that time was a resident of Rapides Parish, but was also conducting farming operations at three locations, one of which was in Newton County, Texas.
At the time of the sale, Daniels declared to the Company that he was transporting the combine to his 1,456 acre farm in Newton County, Texas for use in his rice and soybean operations conducted there. Because the combine was to be taken to and used in Texas, the Company and Daniels entered into a Retail Installment Contract which, it is stipulated, constitutes a valid security agreement under the Uniform Commercial Code which Texas has adopted.
On September 24, 1976, prior to the sale and perfection of the Texas security device, intervenor-lessors, James Domengeaux, Bob Wright, and G. L. Dozier, as owners of and doing business as Meade Plantation (Meade Plantation) entered into a written lease agreement with Daniels. The terms of the lease agreement provided that lessors would lease the large tract of land located in Rapides and Grant Parishes to Daniels for farming purposes for a one year period commencing the first day of January, 1977, *591 and ending at midnight on December 31, 1977.
Daniels defaulted in his obligations to Meade Plantation and to the Company. In December, 1977, Meade Plantation caused a writ of sequestration to issue ordering seizure of all movable property located on Meade Plantation. Included among that property was the combine at issue here.
The Company filed suit against Daniels on December 29, 1977, and obtained a judgment recognizing its lien on the combine. Meade Plantation intervened seeking recognition of its privilege as superior in rank to the Company's. The combine was sold and the proceeds placed in an interest bearing account where they remain pending resolution of this dispute.
The issue posed by this appeal is whether, under the facts of the present case, the Texas security agreement primes the Louisiana lessors' privilege. The trial judge held that it did not and rendered judgment recognizing the lessors' privilege as the superior one. In reaching that conclusion, the trial judge reasoned that since the sale between the Company and Daniels involved Louisiana residents and delivery took place in Louisiana, the entire transaction, i. e., the sale and the security agreement, is subject to and governed by Louisiana law. The trial judge then reviewed Louisiana's chattel mortgage laws, found that the foreign security device perfected by the Company was not in compliance with that law, and on that basis held for Meade Plantation.
The Company urges trial court error in holding that application of Louisiana's chattel mortgage law is mandated under the facts stressed by the court, namely, that this was a Louisiana sale with a Louisiana vendor, Louisiana vendee, and delivery was in Louisiana. In support of its contention, the Company cites LSA-C.C. art. 10, in particular, paragraph two of that article. That article provides:
"The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed.
But the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect."
Upon our review of the record, we are convinced that the Company and Daniels intended the sale and security device to have effect in Texas. Two key employees of the Company, Charles E. Payne and Sam B. Adams, testified on behalf of the Company. Payne, who manages the Company, stated that he personally negotiated with Daniels for the sale of the combine. He testified that Daniels told him that he was taking the combine to Texas for use in his farming operations there. Payne also testified, of his own personal knowledge, that Daniels himself picked up the combine in Alexandria, Louisiana, and hauled it to Texas. The testimony of Adams, the Company's credit manager corroborates Payne's testimony. In addition, Adams stated that he chose to comply with Texas law and utilize the UCC security agreement in reliance on Daniels' statements that the combine was to be transported to and maintained in Texas.
Also, from the fact that in other negotiations and transactions entered into between these same parties, where the equipment was intended for use in Daniels' Louisiana farm operations, the parties utilized Louisiana sales and security agreements, we glean that the parties intended this particular sale to have effect in Texas.
In sum, it is the law of the state in which the parties intend their contract to have effect that governs. Thus, the fact that the parties are residents of another state or that delivery occurs in another state is irrelevant. In this instance, Daniels and the Company contemplated removal of the combine to Texas and on that basis executed a sale and security agreement in conformity with Texas law. Intending the contract to have effect in Texas, Texas law applies and under that law the security agreement is a valid one.
It is well settled that mortgages, unrecorded in Louisiana but valid and enforceable *592 in the states where executed, will be recognized against third parties in this state, unless the mortgaged property was removed to this state with the knowledge or consent of the mortgagee. Jones v. Bradford, 353 So.2d 1348 (La.App. 3rd Cir. 1977); Pecora v. James, 150 So.2d 90 (La.App. 4th Cir. 1963); General Motors Acceptance Corporation v. Nuss, 195 La. 209, 196 So. 323 (1940); and G. F. C. Corporation v. Rollins, 221 La. 166, 59 So.2d 108 (1952).
The record contains ample proof that the combine was brought to this state without the knowledge or consent of the Company. In paragraph five of its petition for recognition of its privilege, the Company specifically pleads that the combine was removed to Louisiana without its consent. Moreover, both Payne and Adams testified that they did not know that Daniels had removed the combine from Texas back to Louisiana. Meade Plantation seeks to refute these contentions by showing that since the Company knew Daniels conducted farming operations in Louisiana, it should therefore not be allowed to argue it did not know of or consent to the property's removal here. We disagree.
In conclusion, we hold that because the Texas security agreement is in due form and filed as that law directs before the combine was returned to the leased premises in this state, it primes the lessor's privilege.
For the above reasons, the judgment of the lower court is reversed and set aside. It is now ordered, adjudged and decreed that plaintiff-vendor's privilege be recognized as superior in rank to the lessors' privilege held by Meade Plantation. All costs to date are assessed against Meade Plantation.
REVERSED AND RENDERED.