514 So.2d 640 (1987)
FORD MOTOR CREDIT COMPANY, Plaintiff-Appellee,
v.
Woodrow PARTEE, Defendant-Appellant.
No. 18599-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1987.
*641 Weiner, Weiss, Madison & Howell by Mark Tatum, Shreveport, for intervenor-appellant Dixie Truck, Inc.
Patricia N. Miramon, Bossier City, curator ad hoc for Woodrow Partee.
Blanchard, Walker, O'Quin & Roberts by John T. Cox, Jr., Shreveport, for plaintiff-appellee.
Cook, Yancey, King & Galloway by Edwin L. Blewer, Jr., Shreveport, for appearer-appellee Don Hathaway-Sheriff of Caddo Parish.
Before JASPER E. JONES, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The intervenor in this suit, Dixie Trucks, Inc. (Dixie), the holder of a repairman's privilege, has appealed the decision of the trial court which held that the security interest of the plaintiff, Ford Motor Credit Company (FMCC), on a large truck, outranks the repairman's privilege held by Dixie. We affirm.

BACKGROUND FACTS
The defendant, Woodrow Partee, an Ohio resident, purchased a 1978 Ford CLT 9000 truck from Tri-State Ford Truck Sales, Inc. in Ohio on January 20, 1984. The contract created a security interest in the vehicle in favor of FMCC. On February 27, 1984, Partee entered into a substitution agreement *642 (chattel mortgage) with FMCC whereby a different truck was substituted for the truck Partee had first purchased. The substituted vehicle, a 1979 Ford CLT 9000 with the vehicle identification number X989VEG9898, is the vehicle currently at issue in this suit. The substituted vehicle and FMCC's security interest were properly recorded in Ohio and duly noted on the Ohio certificate of title.
Partee subsequently leased the 1979 Ford CTL truck to Eddie J. Payne. Without the knowledge or consent of FMCC, Payne took the truck to Texas. Payne applied for a Texas registration on June 11, 1985 and registered the truck in order to obtain Texas license plates. He then began using the truck to haul freight for Mustang Transportation, Inc., a corporation headquartered in Dallas, Texas.
The record does not reflect the date of the lease from Partee to Payne. The record is also silent as to the specific date the truck left the state of Ohio or even whether the truck was intended to be permanently removed from Ohio.
On October 18, 1985, Payne was driving the truck through Shreveport, Louisiana, when the vehicle became disabled. Payne called Dixie Trucks, Inc. and Don Hale, Dixie's service manager, went to inspect the truck. It was determined that the truck would have to be towed to Dixie's shop and completely overhauled. The truck had run out of oil and the bearings had locked up. Thus, very extensive damage was done to the engine. After receiving an estimate of the cost of repair, Payne gave permission for Dixie to proceed with those repairs. In January of 1986, after Dixie had ceased working on the vehicle because Payne had failed to make a deposit on the cost of the repairs, Dixie received calls from FMCC concerning the truck and its location. FMCC first learned that the truck was in Louisiana on January 31, 1986. FMCC was told by Partee that the truck was in Louisiana and that the truck required such extensive repairs that it was no longer economically practical for Partee to continue making payments on the mortgage covering the truck.
On February 11, 1986, Dixie filed suit for over $20,000 to enforce its repairman's privilege for repairs to the truck. Dixie obtained a writ of sequestration and the truck was seized by the sheriff. The truck was left with Dixie as keeper. On March 7, 1986, FMCC filed suit for the $11,417.40 owed by Partee on the Ohio chattel mortgage. FMCC also obtained a writ of sequestration and the truck was again seized, and was taken from Dixie's custody to be held by the sheriff.
Dixie and FMCC both claimed to have the superior lien. In order to expedite the resolution of the legal issues presented, Dixie intervened in FMCC's suit against Partee. Dixie and FMCC subsequently agreed that a quick resolution of the ranking question was in the best interest of both parties. Accordingly, a hearing was scheduled to resolve the issue.
Following the hearing, the trial court ruled that FMCC's privilege was superior to that of Dixie. On July 24, 1986, Dixie filed a devolutive appeal, apparently not wanting to spend additional funds on a bond to support a suspensive appeal. Dixie claimed that the trial court erred in finding that FMCC's privilege outranked Dixie's privilege.
The truck was sold at sheriff's sale on August 27, 1986. The proceeds from the sale were disbursed in accordance with the trial court judgment. The proceeds of the sale were insufficient to fully satisfy the debt owed to FMCC. Therefore, Dixie received no funds from the sale.
On September 11, 1986, FMCC filed in this court a motion to dismiss Dixie's appeal as moot because the truck had been sold. On September 18, 1986, this court denied the motion. Plaintiff was allowed to supplement the record and on October 9, 1986, we denied plaintiff's application to reconsider the motion to dismiss the appeal.
The case was argued on appeal and on April 1, 1987 an opinion was rendered finding that because the Louisiana Court had only quasi in rem jurisdiction by virtue of the seizure of the truck and because the truck was sold, jurisdiction was lost, 505 So.2d 919.
*643 Dixie's petition for rehearing was denied and Dixie applied for writs to the Louisiana Supreme Court. On July 1, 1987, that court granted writs, reversed our judgment, reinstated the appeal, and remanded the case for briefing, argument and decision on the merits, 508 So.2d 810.
The parties rebriefed the case and raised essentially the same issues argued in the original appeal, including the argument that because the truck had been sold, the issue of entitlement to the proceeds is moot. Based upon the reversal by the Louisiana Supreme Court of our previous opinion, we must necessarily conclude that this argument, raised by FMCC, is without merit.
In its consideration of the merits of this case, the trial court found that, under Louisiana law, there was no requirement to re-record a previously recorded foreign security interest on a motor vehicle and, therefore, FMCC's chattel mortgage, recorded in the state of Ohio and noted on the Ohio Motor Vehicle Certificate of Title, primed Dixie's privilege.
Dixie has set forth numerous assignments of error, essentially arguing that the trial court erred in finding that FMCC's mortgage and privilege on the truck outranked Dixie's repairman's privilege. For the following reasons, we affirm the decision of the trial court.

DISCUSSION
Dixie's privilege is based upon LSA-R.S. 9:4501 which provides that any person operating a garage or place where motor vehicles or other machinery are repaired has a privilege upon the vehicle for the cost of repairs, parts or labor. However, LSA-R.S. 9:4502 provides that a repairman's privilege is not effective against several other interests, including a previously recorded chattel mortgage.
It is Dixie's contention that the foreign security interest held by FMCC under Ohio law was not perfected in Louisiana nor did it remain perfected under the laws of Ohio after the truck was removed from that state. Dixie argues that because FMCC's chattel mortgage was not recorded in Louisiana and was no longer perfected under the law of Ohio, it was outranked by Dixie's repairman's privilege.
LSA-R.S. 9:5353 sets forth the requirements for executing and recording a chattel mortage in order for the mortgage to have effect against third persons. According to that provision, the mortgage must be an authentic act or private act duly acknowledged and a certified copy or multiple original must be filed in the mortgage records in the parish where the property is to be located and in the parish of the mortgagor's domicile if the mortgagor is domiciled in Louisiana.
However, LSA-R.S. 9:5353 provides that these requirements do not apply to foreign security interests created and recorded on movable property subject to titling under a foreign motor vehicle statute, provided a certificate of title has been issued and clearly shows that a security interest has been created pursuant to the laws of the state in which the title was issued. This provision also specifies that the section does not repeal the requirements of compliance with Title 32 of the Louisiana Revised Statutes.
LSA-R.S. 9:5366 provides that LSA-R.S. 32:701 through 734 establishes the sole and exclusive method of executing and recording mortgages on vehicles and therefore this chapter, dealing with execution and recordation of chattel mortgages, has no effect upon chattel mortgages on motor vehicles.
LSA-R.S. 32:710(O)(1)[1] provides that the provisions of the section dealing with execution *644 and recordation of chattel mortgages on vehicles do not apply to foreign security interests, provided that a certificate of title has been issued and clearly shows the security interest has been created pursuant to the laws of the state in which the title was issued.
These statutory provisions are in accord with well settled principles of law in this state that a chattel mortgage, properly executed and recorded according to the law of the place where the mortgage is executed and the property is located will, if valid there, be held valid even as against creditors and purchasers in good faith in another state to which the property is removed by the mortgagor. Rerecordation in Louisiana of the foreign chattel mortgage is not necessary in order to protect mortgagees against innocent purchasers or encumbrancers of property after removal to this state provided the foreign mortgagee did not know of or consent to the removal of the property. General Motors Acceptance Corporation v. Nuss, 195 La. 209, 196 So. 323 (1940); Associates Discount Corporation v. Bogard, 229 La. 389, 86 So.2d 76 (1956); Universal C.I.T. Credit Corporation v. Victor Motor Company, 33 So.2d 703 (La.App. 1st Cir.1948); Commercial Credit Corporation v. Post, 52 So.2d 559 (La.App. 2d Cir.1951); Pacific Finance Loans v. Guidry, 69 So.2d 56 (La.App.Orleans, 1953); Scott Truck and Tractor Company of Alexandria, Inc. v. Daniels, 401 So.2d 590 (La.App. 3rd Cir. 1981), writ denied 409 So.2d 617 (La.1981); Jones v. Bradford, 353 So.2d 1348 (La.App. 3rd Cir.1977); Union National Bank v. Goines, 446 So.2d 1334 (La.App. 2d Cir. 1984), writ denied 450 So.2d 955 (La.1984).
This well established principle was found to be unchanged by the advent of Louisiana's Vehicle Certificate of Title Law, LSA-R.S. 32:701 et seq. Pacific Finance Loans v. Guidry, supra. Pecora v. James, 150 So.2d 90 (La.App. 4th Cir.1963).
Therefore, under Louisiana law, this state will recognize the security interest noted on a certificate of title from another state and validly perfected under the laws of that state without the requirement of recordation in this state. The inquiry now becomes whether FMCC held a security interest on the truck that was validly perfected under Ohio law.
There is no dispute that FMCC held a validly executed chattel mortgage under Ohio law up until the time the truck was taken out of state. The dispute concerns how long the chattel mortgage remained effective after the truck was removed from Ohio. It is Dixie's contention that FMCC lost its privilege on the truck by failure to rerecord the chattel mortgage in the appropriate office in the appropriate state after the truck left Ohio. Dixie argues that under Ohio law, rerecordation was required in order to remain a validly perfected security interest recognizable under Louisiana law. For the following reasons, we find Dixie's arguments to be without merit.
Ohio law dealing with secured transactions is based upon the Uniform Commercial Code (UCC). Ohio's adaptation of the UCC provisions dealing with perfection of security interests in multiple state transactions is set forth in Ohio Rev.Civ.Code Ann. § 1309.03(B)(1) and (2). This statute provides that a security interest on a vehicle covered by a certificate of title remains effective for four months after the property leaves the state and continues in effect thereafter until the vehicle is registered in another jurisdiction. Official Comment 4(c) to the Uniform Commercial Code § 9-103, upon which the Ohio statute is based, indicates that the security interest perfected by a notation on the certificate of title will be recognized without limit as to time. It appears that where a lien or security interest is noted on a certificate of title and the collateral is subsequently brought into another state, the security interest noted on the out of state certificate of title continues in effect and results in continued perfection of the security interest in the second state, until a certificate of title in the second state is obtained, without regard to any four month grace period or other period of time. The security interest noted on the *645 certificate of title remains good for an indefinite time after removal of the property to another state, even where the debtor fails to obtain a new certificate of title in the state of removal. See 68 Am.Jur.2d § 25, Secured Transactions.
However, Dixie argues that FMCC's privilege on the truck was no longer valid because of the failure to re-record the mortgage, presumably in Texas, within four months of the time the truck left Ohio. For this proposition, Dixie relies on Official Comment 7 to Ohio Rev.Ann. § 1309.03 and on the cases of Wayne Bank v. Bob Schmidt Chevrolet, Inc., 70 Ohio Misc. 7, 433 N.E.2d 1294 (Comm.Pl.1981) and Arrow Ford, Inc. v. Western Landscape Construction Company, Inc., 23 Ariz.App. 281, 532 P.2d 553 (1975). We do not believe these cases are controlling. In each case, vehicles were bought in foreign states subject to certificate of title laws. In each case, certificates of title were issued by the foreign state noting the security interests of lienholders. The vehicles were then removed to the forum states and new certificates of title were issued which did not reflect the security interests. The original lienholders from the foreign states then tried to assert their security interests as superior to those subsequently obtained in the forum states in reliance upon a clean certificate of title. In each case, the forum state applied its own law, which required reperfection of the foreign security interest within four months of removal from the foreign state, and determined that since new certificates of title had been issued and more than four months had elapsed since the removal of the property from the foreign state, the perfection of the original mortgage lapsed. These cases differ from the present fact situation in that no new certificate of title has been issued in the present case and no time limit for rerecordation is imposed by Louisiana law, which does not require reperfection of the foreign security interest.
Dixie also argues that the registration of the truck in Texas negated the effect of the recordation of the chattel mortgage which was noted on the Ohio certificate of title. We find this argument to be meritless.
The mortgagor did not register the truck in Texas. The lessee, not the mortgagor, registered the truck in Texas for the sole purpose of obtaining license plates in that state. The lessee had no access to the certificate of title and certainly had no interest in causing the mortgage held by FMCC to be recorded in Texas. FMCC was not notified of the removal of the property to Texas, and was not notified of the registration. The registration obtained in Texas was merely a license registration and no negotiable certificate of title was issued. This type registration was not the type registration contemplated by UCC 9-103 or Ohio Rev.C.Ann. § 1309.03(B)(1) and (2), supra. Under this provision of Ohio law, which is in accord with the UCC, the perfection of a security interest noted on a foreign certificate of title continues in force and effect until a certificate is issued by another jurisdiction. When the UCC and the Ohio statute speak of registration, they contemplate the issuance of a negotiable certificate of title, not the procurement of a non-negotiable, non-title registration in connection with the issuance of a vehicle license. Strick Corporation v. Eldo-Craft Boat Co., Inc., 479 F.Supp. 720 (W.D.Arkansas, 1979). Therefore, this "registration" and the action of the lessee in obtaining Texas license plates for the truck did not affect the validity of the perfection of FMCC's mortgage on the Ohio certificate of title.
Dixie next argues that under Louisiana law, FMCC was required to reperfect its security interest in the truck within sixty days of notice that the truck was in Louisiana. We find this argument to be without merit.
Dixie bases this argument on LSA-R.S. 9:5354 which provides that the holder of a foreign security interest may protect his rights in this state after the property comes into Louisiana by recordation within sixty days of notice that the property is in this state. A careful reading of this provision together with LSA-R.S. 9:5353 and 5356 reveals that this requirement applies to foreign security interests on property *646 other than motor vehicles.[2] LSA-R.S. 9:5353 and 5366, dealing with motor vehicles subject to certificates of title, indicates that this time period for rerecordation does not apply to the motor vehicle covered by the Ohio certificate of title in this case.
Dixie also contends that the newly enacted provision of LSA-R.S. 32:710(O)(1), supra, which became effective after the events of this case transpired, divests Dixie of a right already vested. The new provision of LSA-R.S. 32:710(O)(1) (Acts 1986 No. 193 § 2, effective August 30, 1986), supra, further provides that Louisiana shall give effect to the rights of security interest where the security interest is duly noted on a certificate of title issued in the foreign state. This provision was intended to have retroactive application. Acts 1986 No. 193 § 2.
This provision does not change the established and well settled principles of Louisiana law cited above to the effect that recordation in this state of foreign security interests on motor vehicles is not required. Therefore this new statute does not deprive Dixie of any vested right. The addition of this statutory provision is consistent with the Louisiana jurisprudence referred to above and the result is the same. Dixie's repairman's privilege on the truck was always secondary to that of FMCC's prior recorded security interest.
Dixie also argues that the trial court erred in applying 49 U.S.C. § 11304 to this case. That statute specifies that:
A security interest in a motor vehicle owned by, or in the possession and use of, a carrier having a certificate or permit issued under section 10922 or 10923 of this title and owing payment or performance of an obligation secured by that security interest is perfected in all jurisdictions against all general, and subsequent lien, creditors of, and all persons taking a motor vehicle by sale (or taking or retaining a security interest in a motor vehicle) from, that carrier when
(1) a certificate of title is issued for a motor vehicle under a law of a jurisdiction that requires or permits indication, on a certificate or title, of a security interest in the motor vehicle if the security interest is indicated on the certificate;
. . .
Dixie is correct in its assertion that the record does not show that the operators of this truck were licensed as motor common carriers or as motor contract carriers. Therefore, the trial court erred in its application of this statute to the instant case. However, it is clear that the trial court relied in reaching its decision upon the principles of Louisiana law discussed above. Therefore, application of this provision does not constitute reversible error.

CONCLUSION
For the reasons stated above, we affirm the decision of the trial court holding that FMCC's privilege on the truck is superior to that of the intervenor, Dixie. The decision of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] That statute provides as follows:

O. (1) Notwithstanding the domicile of the grantor of a foreign security interest or Louisiana chattel mortgage, the provisions of this Section shall not apply to a foreign security interest or Louisiana chattel mortgage created and recorded on movable property that is subject to titling under the provisions of a foreign motor vehicle statute, provided that a certificate of title has been issued and clearly shows that a security interest has been created pursuant to the laws of the state in which the title was issued or that a Louisiana chattel mortgage has been recorded on such foreign certificate of title.
[2] We do note that LSA-R.S. 9:5354 withholds protection of foreign security interests in motor vehicles to those holders of such security interests who expressly or impliedly consent to sale of the vehicles within the state of Louisiana. This provision is inapplicable to the present case. Further, the fact that foreign security interests in motor vehicles are not mentioned in connection with the sixty day time limit for recordation in this state shows the lack of legislative intent that the time period should apply to foreign security interests in motor vehicles.